1

2

3

4

5

6

7

8

9

10                          UNITED STATES DISTRICT COURT

11                   FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   UNITED STATES OF AMERICA,          ED CR No. 19-0394(A)-SVW

13            Plaintiff,                ORDER SETTING FORTH FACTUAL
                                        FINDINGS PURUSANT TO THE
14            v.                        CARES ACT

15   ROBERT ERIC STAHLNECKER,

16            Defendant.

17

18        The Court, having read and considered the government's ex parte

19   application for an order setting forth factual findings regarding the

20   necessity of proceeding by video teleconference in this case, hereby

21   issues the following factual findings:

22        (1)  On March 13, 2020, the President of the United States

23             issued a proclamation declaring a National Emergency in

24             response to the COVID-19 (Coronavirus Disease) pandemic.

25        (2)  The Governor of the State of California declared a

26             Proclamation of a State of Emergency to exist in California

27             on March 4, 2020.  Health Officers from Los Angeles,

28             Riverside, Orange, San Bernardino, Santa Barbara, San Luis

                                      1

Obispo, and Ventura Counties subsequently issued local emergency orders and proclamations related to public gatherings.

(3)   To date, several thousand people within the Central District of California have been confirmed to be infected with COVID-19 and the number of those infected continues to rise, causing an emergency pandemic.

(4)   In their continuing guidance, the Centers for Disease Control and Prevention and other public health authorities have suggested the public avoid social gatherings in groups of more than 10 people and practice physical distancing (within about six feet) between individuals to potentially slow the spread of COVID-19.  The virus is thought to spread mainly from person-to-person contact, and no vaccine currently exists.

(5)   These social distancing guidelines -- which are essential to combatting the virus -- are generally not compatible with holding in-person court hearings.

(6)   On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which authorized the Judicial Conference of the United States to provide authority to Chief District Judges to permit certain criminal proceedings to be conducted by video or telephonic conference.

(7)   Under § 15002(b) of the CARES Act, "if the Judicial Conference of the United States finds that emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C.

1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID-19) will materially affect the functioning of either the Federal courts generally or a particular district court of the United States, the chief judge of a district court . . . specifically finds, upon application of the Attorney General or the designee of the Attorney General, or on motion of the judge or justice, that felony pleas under Rule 11 of the Federal Rules of Criminal Procedure and felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in person without seriously jeopardizing public health and safety, and the district judge in a particular case finds for specific reasons that the plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice, the plea or sentencing in that case may be conducted by video teleconference, or by telephone conference if video teleconferencing is not reasonably available."

(8) On March 29, 2020, the Judicial Conference of the United States made the appropriate findings as required under the CARES Act, finding specifically that "emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. § 1601, et seq.) with respect to the Coronavirus Disease 2019 (COVID-19) have materially affected and will materially affect the functioning of the federal courts generally."

(9) On March 29, 2020, the Chief Judge of this District also made the appropriate findings as required under the CARES

Act, finding "that felony pleas under Rule 11 of the
Federal Rules of Criminal Procedure and felony sentencings
under Rule 32 of the Federal Rules of Criminal Procedure
cannot be conducted in person without seriously
jeopardizing public health and safety.  As a result, if
judges in individual cases find, for specific reasons, that
felony pleas or sentencings in those cases cannot be
further delayed without serious harm to the interests of
justice, judges may, with the consent of the defendant or
the juvenile after consultation with counsel, conduct those
proceedings by video conference, or by telephonic
conference if video conferencing is not reasonably
available."

(10) Through this order, I now find that the sentencing in this
case cannot be further delayed without serious harm to the
interests of justice.  My specific reasons are as follows:

(11) On March 23, 2020, the Chief Judge of this District
activated The Continuity of Operations ("COOP") Plan for
the Central District of California.  On May 28, 2020, the
Court extended the COOP Plan for the Central District of
California.

(12) Under the COOP Plan, all of the Courthouses of the Central
District of California are closed to the public except for
hearings on criminal duty matters.  Hearings by video and
telephonic conference may be held by individual Judges in
certain criminal matters.  Hearings in any criminal matters
may proceed in-Court beginning June 22, 2020 -- at the
earliest.

4

(13) On April 9, 2020, the Judicial Council of the Ninth Circuit declared a judicial emergency in this District pursuant to 18 U.S.C. § 3174(d).  The Judicial Council declared this emergency because, among other reasons, the Central District of California is one of the busiest judicial districts in the country.

(14) As described in the report accompanying the Judicial Council's declaration, this District currently ranks 3rd in the Ninth Circuit and 12th nationally in weighted filings, with 692 weighted filings per judgeship for the 12-month period ending December 31, 2019.  Considering the 10 judicial vacancies, the adjusted weighted filings per judge is 1,076.  Overall, the total civil and criminal filings in the District reached 16,890 in 2019.

(15) Prior to the Judicial Council declaring the judicial emergency, the number of criminal cases filed by the U.S. Attorney's Office had risen substantially over previous totals.  The USAO has represented that the number of AUSAs in the Central District is at an all-time high, and that the USAO will soon have approximately 220 AUSAs to prosecute criminal cases.

(16) This District is authorized 27 permanent judgeships, one temporary judgeship, and has 10 vacancies, the oldest of which has remained unfilled since 2014.  All are categorized as judicial emergencies.  There are eight nominees pending, but due to the COVID-19 pandemic the status of confirmation hearing dates remains uncertain.

Seven active district judges are eligible to take senior
status or retire immediately.

(17) Since 2011, this District has requested anywhere from 8 to
13 additional judgeships.  The District has not received
any additional permanent or temporary judgeships since
1990.

(18) As the Judicial Conference concluded, the exceptionally
large number of cases pending in this District represents
an emergency.  A vacancy on a district court is generally
considered an "emergency" if the court's "weighted filings"
exceed 600 per judgeship.  The Central District of
California's weighted filings, 692 per judgeship (61
percent above the Conference standard), are high enough for
each Judge's caseload to be deemed an emergency.

(19) In normal times, these extreme caseloads can interfere with
the prompt resolution of cases and administration of
justice in this District.  In an October 2019 letter to the
White House and Congress, the Chief Judge of this District
warned that "[a]s alarming as this is, the situation may
well worsen.  Many of the active district judges on the
Court who are eligible to retire continue to serve, despite
the ever growing workload.  If all of them chose to retire,
only eleven active judges would remain, putting at grave
risk our Court's ability to serve the millions of people in
the Central District."

(20) The ongoing COVID-19 pandemic will only exacerbate these
serious problems.  As described in an April 9 Bloomberg
article entitled "Short-Benched U.S. Trial Courts Face

1     Post-Pandemic Crisis," districts with high caseloads and a

2     large number of judicial vacancies -- such as this District

3     -- will be challenged to deal with the huge backlog of

4     trials, hearings, sentencings, and other matters once

5     normal operations resume.  In an email to Bloomberg

6     commenting on this article, the Chief Judge of this

7     District agreed that the Central District of California

8     will have a "significant backlog of trials" when normal

9     operations resume.  She further expressed that the Judicial

10    Council's recent declaration was "critical for us, given

11    that all ten of our district judge vacancies have been

12    declared judicial emergencies, and that we have an

13    extremely heavy caseload."

14  (21) Given these facts, it is essential that Judges in this

15    District resolve as many matters as possible via video

16    teleconference and telephonic hearing while the COOP Plan

17    remains in effect.  By holding these hearings now, this

18    District will be in a much better position to work through

19    the backlog of criminal and civil matters once in-person

20    hearings resume.

21  (22) I therefore conclude that the sentencing in this case

22    cannot be further delayed without serious harm to the

23    interests of justice.  If the Court were to delay this

24    hearing until it can be held in-person, it would only add

25    to the enormous backlog of criminal and civil matters

26    facing this Court, and every Judge in this District, when

27    normal operations resume.

28

(23) In addition, in this specific case, the sentencing in this case cannot be further delayed without serious harm to the interests of justice because both the victims and the defendant are eager to move forward.  Additionally, defendant has been detained since December 2019 and is asking the Court to impose a sentence of one year and a day.

(24) The defendant in this case consents to proceed with his sentencing by video teleconference.

(25) Based on the findings above, and my authority under § 15002(b) of the CARES Act, the sentencing in this case will be conducted by video teleconference as soon as possible.

IT IS SO ORDERED.

June 22, 2020
DATE

THE HONORABLE STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

Presented by:

/s/
PETER DAHLQUIST
Assistant United States Attorney

8