1
UNITED STATES DISTRICT COURT

2
CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3
HONORABLE STEPHEN V. WILSON

4
UNITED STATES DISTRICT JUDGE PRESIDING

5
- - -

6
United States of America,                )
7
                    PLAINTIFF,    )
                                          )
8
VS.                                       )    NO. CR 19-394 SVW
                                          )
9
Robert Stahlnecker,                       )
                    DEFENDANT,    )
10
_____)

11

12

13
REPORTER'S TRANSCRIPT OF PROCEEDINGS

14
JURY TRIAL - DAY TWO

15
LOS ANGELES, CALIFORNIA

16
WEDNESDAY, FEBRUARY 12, 2020

17

18

19
_____

20
KATIE E. THIBODEAUX, CSR 9858
U.S. Official Court Reporter
21
Suite 4311
350 West 1st Street
22
Los Angeles, CA  90012

23

24

25

```
 1   APPEARANCES OF COUNSEL:

 2


 3   ON BEHALF OF THE PLAINTIFF, UNITED STATES OF AMERICA:

 4                        U.S. DEPARTMENT OF JUSTICE
                          U.S. ATTORNEY'S OFFICE
 5                        BY: PETER DAHLQUIST, AUSA
                          3404 10th Street
 6                        Suite 200
                          Riverside, CA  92501
 7


 8


 9   ON BEHALF OF THE DEFENDANT:

10                        DAVID R. REED LAW OFFICES
                          BY: DAVID R. REED
11                        3699 Wilshire Boulevard
                          Suite 850
12                        Los Angeles, CA  90010

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                            I N D E X

2

3    WITNESS NAME                          PAGE

4     (None.)

5

6

7

8    EXHIBIT                     I.D.      IN EVID.

9     (None.)

10

11

12   CLOSING ARGUMENTS                     PAGE

13    By Mr. Dahlquist                     19

14    By Mr. Reed                          41

15    By Mr. Dahlquist                     62

16

17

18

19

20

21

22

23

24

25
```

1    LOS ANGELES, CALIFORNIA; WEDNESDAY, FEBRUARY 12, 2020

2                          9:42 A.M.

3                          - - - - -

4

5

6        (The following proceedings were held outside the

7         presence of the jury:)

8        THE COURT:  Okay.  We are present with the

9    defendant and counsel for both sides.  The court has

10   finalized the jury instructions and the verdict form and

11   given you each a copy.  They are essentially the way we

12   discussed last evening.

13           There are a few modifications.  I will tell

14   you about that, but, before I get to those minor

15   modifications, I want to ask Mr. Reed a couple of

16   questions -- take the lecturn, if you will -- regarding

17   the Rule 29 motion, and I am focused only on the 115

18   count.

19           Is it your recollection that there were two

20   witnesses who said that the defendant said, I am going to

21   kill you, or was it just one?

22        MR. REED:  No.  Each count -- there is two counts,

23   and on each one of those counts each of the separate

24   witnesses says, I am going to kill you.  And there are

25   swear words thrown in amongst that.

```
 1          THE COURT:  All right.  And, then, the other input
 2   I want concerns the 115 count in terms of assault and
 3   murder.  I heard no evidence about assault.  I just heard
 4   evidence about murder.  I was thinking in light of the
 5   evidence that the jury ought to just be instructed on the
 6   murder.
 7          MR. REED:  I agree, your Honor.  I don't recollect
 8   any evidence of Mr. Stahlnecker saying I am coming to
 9   beat you up or hurt you.
10          THE COURT:  What is the government's view of that?
11          MR. DAHLQUIST:  We agree, your Honor.
12          THE COURT:  All right.  So that will require a
13   modification of the verdict form on Counts 1 and 2.  I
14   will no longer have to give the unanimity instruction and
15   anyone in terms of the -- the unanimity part of the
16   verdict form won't be needed, but I will have to modify
17   the instruction, the 115 instruction.  And that will be
18   No. 13.
19          It says here, the first element the government
20   must prove beyond a reasonable doubt is that defendant
21   threatened to assault or murder.  I will take out
22   assault.  Just threatened to murder.  And I won't -- and,
23   then, as I said, I did define murder.  I won't define
24   assault, and murder is defined in Instruction 13, second
25   page.  Murder is the unlawful killing of another human
```

1  being with malice aforethought meaning to kill either

2  deliberately and intentionally or recklessly with extreme

3  disregard for human life.  That is the instruction that I

4  thought most fits the instruction here.

5           And, then, oh, yes.  Also, on Instruction 13,

6  I did go back and look at that Bagdasarian case again in

7  the Ninth Circuit, and, yesterday, when we discussed that

8  instruction, I said I was going to take out particular

9  person.  The Bagdasarian case does talk about a

10  particular person.  It doesn't speak about a particular

11  person in the sense that the defendant has argued that it

12  is a particular identifiable person, but it does use the

13  term particular person.

14           So, in following that case, I am going to

15  include particular person but not particular identifiable

16  person because I don't think there is any support that I

17  could find for that.  And that, I think is -- in the

18  evidence, did that statement by the defendant come in

19  regarding something he said to the effect that aren't you

20  glad that I am only verbally abusing you and not doing

21  more or something like that?

22       MR. DAHLQUIST:  No, your Honor.  That statement

23  did not come in.

24       THE COURT:  Did you want that to come in?

25       MR. REED:  No, I don't.

```
 1            THE COURT:  I see.  I mean, that statement cuts
 2    two ways.  It sort of could help you on the 115 but hurt
 3    you on the others; right?
 4            MR. REED:  Yes, your Honor.
 5            THE COURT:  I see.  All right.  Get the jury,
 6    Paul.
 7            THE CLERK:  Yes, your Honor.
 8         (The following proceedings were held in the
 9            presence of the jury:)
10            MR. TRISOTTO:  Your Honor, can I clarify one thing
11    on Court Instruction 12 and 13.
12            THE COURT:  Yes.  Hold the jury there.
13            MR. TRISOTTO:  I just wanted to make sure you
14    mentioned you would be taking out assault from
15    Instruction 13.  It is also referenced in Instruction
16    No. 12 in the first element.  It is line 7 of Court's
17    Instruction No. 12.
18            THE COURT:  Yes, I will take that out.
19            MR. TRISOTTO:  And then in addition to the first
20    paragraph on Court's Instruction No. 13, it is also
21    referenced on the second page of Court's Instruction
22    No. 13 from line 6 through 10 where you define assault.
23            THE COURT:  I did take that out.
24            MR. TRISOTTO:  And then also lines -- the second
25    half of line 13 to line 15.
```

```
 1            THE COURT:  Okay.  I will take that out.

 2            MR. TRISOTTO:  Thank you.

 3            THE COURT:  I guess I will take the whole

 4   paragraph out because that is the unanimity instruction.

 5            MR. TRISOTTO:  I agree.

 6            THE COURT:  I will take the whole paragraph out.

 7               Get the jury.

 8        (The following proceedings were held in the

 9            presence of the jury:)

10            THE COURT:  Good morning, members of the jury.

11   Thank you for your special efforts to be prompt.

12               Just one minute.  I have to get something

13   here.

14               Okay.  Members of the jury, now that you have

15   heard all the evidence, you shortly will hear the

16   arguments of the lawyers.  It is my duty to instruct you

17   on the law that applies to this case.  You will all

18   receive a copy of these instructions that you may take to

19   the jury room to consult during your deliberations.

20               It is your duty to find the facts from all the

21   evidence in the case.  To those facts, you will apply the

22   law as I give it to you.  You must follow the law as I

23   give it to you whether you agree with it or not, and you

24   must not be influenced by any personal likes or dislikes,

25   opinions, prejudices or sympathy.  That means you must
```

1    decide the case solely on the evidence before you.  You

2    will recall that you took an oath to do so.

3         Please do not read into these instructions or

4    anything I may have said or done any opinion regarding

5    the evidence or what your verdict should be.  You must

6    follow all these instructions and not single out some and

7    ignore others.  They are all important.

8         As I told you at the outset, the first

9    superseding indictment is not evidence.  The defendant

10   has pleaded not guilty to the charges.  The defendant is

11   presumed to be innocent unless and until the government

12   proves the defendant guilty beyond a reasonable doubt.

13   In addition, the defendant does not have to testify or

14   present any evidence.  The defendant does not have to

15   prove innocence.  The government has the burden of

16   proving every element of the charges beyond a reasonable

17   doubt.

18        Proof beyond a reasonable doubt is proof that

19   leaves you firmly convinced the defendant is guilty.  It

20   is not required the government prove guilt beyond all

21   possible doubt.  A reasonable doubt is a doubt based upon

22   reason and common sense and is not based purely on

23   speculation.  It may arise from a careful and impartial

24   consideration of all the evidence or from lack of

25   evidence.

1        If after a careful and impartial consideration

2   of all the evidence, you are not convinced beyond a

3   reasonable doubt that defendant is guilty, it is your

4   duty to find defendant not guilty.  On the other hand, if

5   after a careful and impartial consideration of all the

6   evidence, you are convinced beyond a reasonable doubt

7   that defendant is guilty, it is your duty to find

8   defendant guilty.

9        The evidence you are to consider in deciding

10  what the facts are consists of the sworn testimony of any

11  witness, the exhibits received in evidence and any facts

12  to which the lawyers have agreed or stipulated.  In

13  reaching your verdict, you may consider only the

14  testimony and exhibits received in evidence.

15        The following things are not evidence and you

16  may not consider them in deciding what the facts are:

17  Questions, statements, objections and arguments by the

18  lawyers are not evidence.  The lawyers are not witnesses.

19  Although you may consider a lawyer's questions to

20  understand the answers of a witness, the lawyers'

21  questions are not evidence.  Similarly, what the lawyers

22  have said in their opening statement, what they will say

23  in their closing arguments and at other times is not

24  evidence.

25        If the facts as you remember them differ from

1    the way the lawyers state them, your memory of them

2    controls.  Any testimony that I have excluded, stricken

3    or instructed you to disregard is not evidence.  Anything

4    you may have seen or heard when the court was not in

5    session is not evidence.  You are to decide the case

6    solely on the evidence received at the trial.

7                    Evidence may be direct or circumstantial.

8    Direct evidence is direct proof of a fact such as

9    testimony of a witness about what that witness personally

10   saw or heard or did.  Circumstantial evidence is indirect

11   evidence.  That is, it is proof of one or more facts from

12   which you can find another fact.  You are to consider

13   both direct and circumstantial evidence.  Either can be

14   used to prove any fact.  The law makes no distinction

15   between the weight to be given to either direct or

16   circumstantial evidence.  It is for you to decide how

17   much weight to give to any evidence.

18                    In deciding the facts in this case, you have

19   to decide which testimony to believe and which testimony

20   not to believe.  You may believe everything a witness

21   says or part of it or none of it.  In considering the

22   testimony of any witness, you may take into account:

23   One, the witness' opportunity and ability to see or hear

24   or know the things testified to; two, the witness'

25   memory; three, the witness' manner while testifying;

1    four, the witness' interest in the outcome of the case if

2    any; five, the witness' bias or prejudice, if any; six,

3    whether other evidence contradicted the witness'

4    testimony; seven, the reasonableness of a witness'

5    testimony in light of all the evidence; and, eight, any

6    of the factors that bear on believability.

7           Sometimes a witness may say something that is

8    not consistent with something he or she said.  Sometimes

9    different witnesses will give different versions of what

10   happened.  People often forget things or make mistakes in

11   what they remember.  Also, two people may see the same

12   event but remember it differently.  You may consider

13   these differences, but do not decide the testimony is

14   untrue just because it differs from other testimony.

15          However, if you decide that a witness has

16   deliberately testified untruthfully about something

17   important, you may choose not to believe anything that

18   witness said.  On the other hand, if you think the

19   witness testified untruthfully about some things but told

20   you the truth about others, you may accept the part you

21   think is true and ignore the rest.  The weight of the

22   evidence as to a fact does not necessarily depend on the

23   number of witnesses who testify.  What is important is

24   how believable the witnesses were and how much weight you

25   think their testimony deserves.

1           The defendant has testified.  You should treat

2   this testimony just as you would the testimony of any

3   witness.  You are here only to determine whether the

4   defendant is guilty or not guilty of the charges in the

5   first superseding indictment.

6           The defendant is not on trial for any conduct

7   or offense not charged in the first superseding

8   indictment.  A separate crime is charged against the

9   defendant in each count.  You must decide each count

10  separately.  Your verdict on one count should not control

11  your verdict on any other count.

12          The first superseding indictment charges the

13  offenses alleged were committed on or about certain

14  dates.  Although, it is necessary for the government to

15  prove beyond a reasonable doubt that the offenses were

16  committed on a date reasonably near the dates alleged in

17  the first superseding indictment, it is not necessary for

18  the government to prove the offenses were committed

19  precisely on the date charged.

20          Defendant is charged in Count 1 and 2 of the

21  first superseding indictment with threatening a federal

22  employee in violation of Title 18, United States Code,

23  Section 115(a)(1)(B).

24          For the defendant to be found guilty of that

25  charge, the government must prove each of the following

1  elements beyond a reasonable doubt:

2          First, defendant threatened murder --

3  threatened to murder the victim identified in the -- the

4  victims identified in the first superseding indictment.

5          Second, at the time of the alleged threat, the

6  victims were employees of the United States government.

7          Third, the defendant acted with the intent to

8  impede, intimidate or interfere with that victim while

9  she was engaged in the performance of her official duties

10 or the defendant acted with the intent to retaliate

11 against the victim on account of the performance of her

12 official duties.

13          The first element the government must prove

14 under the statute I just read to you beyond a reasonable

15 doubt is that the defendant threatened to murder the

16 victim.  A threat is a serious statement expressing an

17 intention to inflict bodily injury or murder immediately

18 or in the future as distinguished from idle or careless

19 talk, exaggeration or something said in a joking manner.

20          For a statement to be a threat, it must be a

21 true threat.  The statement must have been under such

22 circumstances that a reasonable person who heard the

23 statement would understand it as a serious expression of

24 an intent to murder.  In addition, the defendant must

25 have made the statement intending it to be a threat to a

1  particular person and with knowledge that the statement

2  would be viewed as a threat to that particular person.

3       To determine whether or not the defendant

4  threatened the victim, you should consider the

5  circumstances under which the statement was made

6  including the context with respect to surrounding

7  conversations, the language used and the reaction of

8  those who heard the statement.  It is not necessary that

9  the government prove that the defendant intended to carry

10  out the threat or that he had the present ability to

11  carry out the threat.  Murder is the unlawful killing of

12  another human being with malice aforethought meaning to

13  kill either deliberately and intentionally or recklessly

14  with extreme disregard for life.

15       The third element that the government must

16  prove regarding Counts 1 and 2 beyond a reasonable doubt

17  is that defendant acted with the intent to impede,

18  intimidate or interfere with the employee while he or she

19  was engaged in the performance of their official duties

20  with the intent to retaliate against that employee on

21  account of the performance of their official duties.

22       The word impede means to stop the progress,

23  obstruct or hinder.  The word intimidate means to make

24  timid or fearful, to inspire or affect with fear, to

25  frighten, to deter or overawe.  The word interfere with

1    means to come into collision with, to intermeddle, to

2    hinder, to interpose, to intervene.  The word retaliate

3    means to return like for like, to act in reprisal for

4    some past act.

5            The ultimate fact of a defendant's intent may

6    be established by circumstantial evidence based on

7    defendant's outward manifestation, his words, his

8    conduct, his acts, all the surrounding circumstances

9    disclosed by the evidence and the rational or logical

10   inferences that may be drawn from them.

11           The defendant is charged in Count 3 of the

12   first superseding indictment with transmitting in

13   interstate commerce a threatening communication to a

14   person in violation of Section 75(c) of Title 18 of the

15   United States Code.

16           In order for defendant to be found guilty of

17   that charge, the government must prove each of the

18   following elements beyond a reasonable doubt:  First,

19   defendant knowingly transmitted in interstate commerce a

20   telephonic communication containing a threat to injure a

21   person; second, such telephonic communication was

22   threatened for the purpose of issuing a threat or with

23   knowledge that the telephone communication would be

24   viewed as a threat.

25           The government need not prove defendant

1    intended to carry out the threat.  Interstate commerce

2    includes telephone calls where the telephone call is made

3    from one state to another.

4          It is not necessary that defendant knew

5    whether a communication would be or was transmitted

6    through interstate commerce.  An act is done knowingly if

7    defendant is aware of the act and does not act through

8    ignorance, mistake or accident.  You may consider

9    evidence of defendant's words, acts or omissions along

10   with all the other evidence in deciding whether the

11   defendant acted knowingly.

12         With respect to your analysis of whether

13   defendant is guilty of Count 3 of the first superseding

14   indictment, you must, just as in Count 1 and 2, determine

15   if defendant intended his communication to be a true

16   threat as it was defined for you in the previous

17   instructions.

18         Defendant is charged in Counts 4 through 8 of

19   the first superseding indictment with anonymous

20   telecommunications, harassment, in violation of Section

21   223(a)(1)(C) of Title 43 of the United States Code.

22         In order for defendant to be found guilty of

23   that charge, the government must prove each of the

24   following beyond a reasonable doubt:  First, defendant

25   made an interstate telephone call; second, defendant did

1    not disclose his identity during the telephone call;

2    third, defendant intended to abuse, threaten or harass

3    any person at the called number.  The third element of

4    this crime requires defendant to intend to abuse or

5    threaten or harass any person at the called number.

6            Here, you are not required to find that

7    defendant intended to abuse, threaten or harass any

8    particular type of person.  It can be any person at the

9    called number.  To conclude that defendant intended to

10   harass, you are required to find that the defendant had

11   the specific intent to provoke adverse reactions in the

12   called parties.  Defendant had to have an intent to

13   provoke adverse reactions in the called party.

14           To conclude that the defendant intended to

15   abuse, you are required to find defendant acted to use

16   shockingly or inappropriately harsh, coarse language

17   against the called parties.  To conclude defendant

18   intended to threaten, you are required to find defendant

19   intended to communicate his intent to inflict harm, loss

20   or pain on the called parties.

21           To find defendant guilty of any one count, you

22   must actually find the defendant guilty of Counts 4

23   through 8.  You must unanimously agree on which intent he

24   acted with, whether to harass, threaten or to abuse.

25           I have some parting instructions to give you

1   after the lawyers complete their arguments.  They are

2   brief, but I will await giving you those instructions

3   until the lawyers have given you their final arguments.

4          Okay.  First, we will hear from the

5   government?

6      MR. DAHLQUIST:  The defendant terrorized, abused

7   and threatened government employees mercilessly.  He

8   wanted them to know he was serious.  That is what he said

9   when he testified.

10         Not only that, what increased the scariness of

11   his conduct was he wanted to know their names.  He wanted

12   to write them down.  He wanted first and last names, and

13   while he wanted their names, he refused to provide his.

14   He hid behind fake names and a blocked phone number.  Not

15   only did he intend to scare them, he was proud of it.

16   That is why he gloated to Ms. Uhrig when he told her that

17   he had just spoken with her colleague and that he had

18   made Allison, Sarah and, in his words, "some bitch named

19   Frances" almost cry.  He was proud of the power that he

20   had over them.

21         He had found a captive audience.  He had found

22   people whose job it was to answer the phone, and he was

23   going to call them.  And he knew that they had to answer.

24   And he knew that they had to be polite and respectful.

25   And he knew that if they hung up on him or if he hung up

1   on them, he would call right back and they would have to

2   answer.  He did this because, to him, they were

3   worthless, his words.  They were nothing.  His words.

4   They are not nothing.  They are not worthless, and the

5   law protects them.

6           The defendant is charged in eight counts.

7   Each of the counts -- and I am going to go through and I

8   am going to explain each of the counts and how the

9   evidence fits within each of the different counts and

10  proves that the defendant is guilty of all eight counts.

11  I am going to spend the majority of my time discussing

12  the first two counts, and then I will move on to the

13  third and fourth count.  And, then, finally, I am going

14  to summarize the remaining counts much more quickly

15  because the elements are all very similar, and the things

16  that the government has to prove are all very similar.

17          So with respect to the first count, Count 1,

18  this is the threat that the defendant made to Ms. Raghda

19  Karajah on August 29th, 2019.  There are three things

20  that the government has to prove beyond a reasonable

21  doubt for the defendant to be found guilty of this

22  offense.  First, that the defendant threatened to murder

23  Ms. Karajah.

24      THE COURT:  On the screen, you have assault so

25  that is not relevant.

1          MR. DAHLQUIST:  That's correct, your Honor.

2          THE COURT:  So ignore that.  Just the only threat

3    in this case that you can consider is if there was a

4    threat to murder.

5          MR. DAHLQUIST:  Second, that the victim was a

6    United States government employee; and, third, that the

7    defendant intended to impede, intimidate or interfere or

8    that the defendant intended to retaliate against the

9    employee.

10          Also, it is important to remember what is not

11    an element in this case.  It is not, as the judge

12    instructed you, it is not necessary that the government

13    prove that the defendant intended to carry out the threat

14    or that he had the ability, the present ability to carry

15    out the threat.  That is not what he is charged with.  He

16    is charged with making the threat, and that is what he is

17    guilty of.

18          When it comes to evaluating what is a threat,

19    what is a true threat as the judge stated, a threat is a

20    serious statement expressing an intention to inflict

21    bodily injury or murder at once or in the future as

22    distinguished from idle or careless talk, exaggeration or

23    something said in a joking manner.  When evaluating

24    whether a statement is a serious expression, you should

25    also evaluate -- you also have to determine the

1    defendant's intent, that he intended the statement be

2    viewed as a threat or knew that it would be viewed as a

3    threat and that a reasonable person would understand that

4    it was a threat.

5          And as you are making this conclusion, the

6    judge instructed you that you are to consider three

7    things.  Consider the context under which the statement

8    was made, the defendant's language that he used and also

9    the reaction of the victim who heard the threat.  All

10   three factors confirm that this was a serious statement

11   expressing an intent to murder.

12          First, we will consider the context.  So you

13   will recall this was the call on August 29th when the

14   defendant called and initially spoke with someone and

15   then he was transferred to Ms. Raghda Karajah.

16          The defendant launched into questions about

17   the VA hospital in Loma Linda, California.  Ms. Karajah

18   made a sincere effort to help him.  She offered to call

19   his representative in his district and find out what was

20   going on because she wasn't familiar with what he was

21   talking about with the Loma Linda hospital.

22          But he threw that in her face.  That only made

23   him more angry.  He started yelling, and he was screaming

24   and he sounded angry.  He told her to fuck off, and he

25   hung up on her.  He called her back, he yelled at her

1    again, and he told her if he was an illegal, then maybe

2    the congresswoman would care.  He accused the

3    congresswoman of kill veterans, told her to fuck off,

4    and, after this escalation of getting more and more angry

5    and more and more profanity, in that context, that is

6    when he made this clear statement:  I am going to come to

7    your office and kill you, fuck you.

8         You consider the defendant's language in

9    evaluating whether this is a serious statement expressing

10   an intent to kill.  That is exactly what this is.  It is

11   a serious statement expressing an intent to kill.  There

12   is nothing joking about it.  There was nothing within the

13   context of the conversation to suggest that this was an

14   exaggeration or a joke or something that was anything

15   less than what it is, a serious threat.

16        You also consider the reaction of the victim.

17   That makes sense.  Ms. Car was the one who heard his

18   words.  She was in the best position to say this is how I

19   felt.  This is what I understood these words to mean,

20   given the context, given the language.  She understood

21   and she testified that this was a serious statement and a

22   direct threat.  Her first thoughts were the concern for

23   her, herself, her safety and her co-workers.  She

24   supervises interns and she -- that was her first thought.

25        She thought of the interns who work in the

1    front of the office and would be exposed to danger in the

2    event that the defendant could carry out this threat.

3    She took it literally.  When she was asked, what did you

4    understand this to mean, she said, I took it literally, I

5    didn't know this, I didn't know this man.  Given the

6    context, she believed that this was a true threat, a

7    serious statement.  The first element is satisfied beyond

8    a reasonable doubt.

9         The second element is also satisfied beyond a

10   reasonable doubt.  Ms. Car was an employee of the United

11   States government.  She is an employee of the House of

12   Representatives.  That element is satisfied beyond a

13   reasonable doubt.

14        The third element is also satisfied beyond a

15   reasonable doubt.  The court, the judge described to you

16   direct and circumstantial evidence and that the law makes

17   no distinction between direct and circumstantial

18   evidence.  And, ultimately, the fact of intent is based

19   on the evidence that is presented.  It is based on the

20   defendant's words, his conduct, his acts and the

21   surrounding circumstances.

22        In this case, his words were clear.  There was

23   nothing else else he could have intended to communicate

24   when he said, I am going to come to your office and kill

25   you, fuck you, than intending to communicate

1    intimidation, intending to communicate fear, intending to

2    scare her.

3            And that is exactly what Ms. Car said.  She

4    was intimidated.  She said this was a direct threat.  And

5    Mr. Perkins' testimony, her supervisor, confirmed that

6    this was a direct threat.  He confirmed that she is

7    normally a calm, reserved, detail-oriented person, but

8    in, this instance, she was scared.  She was afraid for

9    her life, and she was worried the caller was coming to

10   kill her.  The third element is satisfied beyond a

11   reasonable doubt.

12           Now, I am moving on to Count 2.  Counts 2

13   through 4 all relate to the same series of calls which

14   are the calls that occurred on September 26th, 2019, that

15   the caller made to Senator Brown's office when he spoke

16   to Ms. Leah Uhrig.  All of these charges, Counts 2 and 3

17   and 4, all relate to the same calls, but he is charged

18   with violating different laws which is why he is charged

19   with three different counts for the same conduct.

20           The elements for this charge are the same as

21   for Count 1:  First, the threat to murder, as the judge

22   mentioned, not a threat to assault; second, that the

23   victim was an employee of the United States government;

24   and, third, that the defendant intended to impede,

25   intimidate or interfere or he intended to retaliate.

1          Again, it is not necessary to prove that the

2    defendant intended to carry out the threat or that he had

3    the ability to do so.

4          And, again, as I stated before, a threat is a

5    serious statement expressing an intent to commit an

6    unlawful act of violence, and, in evaluating whether a

7    threat is a serious statement, again, we consider the

8    context, the language and the reaction of the victim.

9          The context for this threat also confirms that

10   it was a serious statement.  Ms. Uhrig talked about the

11   history that the defendant had made repeated calls, and,

12   on this day, he initiated the caller, first addressed her

13   by asking her, are you a lowly intern that doesn't

14   fucking matter.

15         Ignoring that insult and that slight,

16   Ms. Uhrig intended to help him, intended to connect him,

17   to transfer his call to somebody so from the defendant's

18   perspective who did fucking matter.  So when she tried to

19   solicit that information to get the zip code, the

20   information that she needed to transfer the call, he

21   replied that he didn't have to provide that information

22   because she was a miserable little cunt.  And he hung up

23   on her, called her back, told her that his Social

24   Security number was go-fuck-yourself even though that

25   wasn't requested.

```
 1              And then ultimately he said this:  He said, I
 2    am going to come to your office and kill you, you
 3    miserable little cunt.  You will notice that this
 4    language is nearly identical to the language that
 5    Ms. Karajah testified.  They used the exact same
 6    language, I am going to come to your office and kill you.
 7    With Ms. Car, he used a different expletive at the end of
 8    the statement, but the statement is the same.
 9              These are two witnesses that live on opposite
10    sides of the country that don't know each other that have
11    no motive to lie or fabricate.  They have no incentive to
12    alter their testimony.  The judge instructed you about
13    when he was discussing the believability of witnesses
14    that you should consider whether they have a stake in the
15    case, whether they have any motive to lie at all.
16              The defendant said he never threatened to kill
17    anybody.  He said he never used the word "kill."  These
18    witnesses were sure he said the word "kill."  Ms. Car
19    said that she heard the word "kill," and she wrote the
20    word "kill" down and she wouldn't have done it otherwise.
21              The defendant, unlike these two witnesses who
22    have no stake in the case, no reason to lie, the
23    defendant does have a stake in the case.  He doesn't want
24    to be convicted of this crime.  That is why he said he
25    never used the word "kill."
```

```
 1              When evaluating whether this is a serious
 2    statement, you should also consider the reaction of the
 3    victim.  As I stated, Ms. Uhrig was in the best position.
 4    She had the history with the caller.  She was in the best
 5    position to confirm that this was indeed a serious
 6    threat.  She described that she felt fear, panic and
 7    anxiety.  She said this was her first and only death
 8    threat.  You heard her testify.  You saw how she felt and
 9    how it made her feel.  She knew it wasn't an idle threat.
10              When she heard the threat and in the aftermath
11    of reacting to it, she was relieved that she didn't
12    provide her name because she knew there was a serious
13    expression of an intent to kill her.
14              She turned white.  She was staring at the
15    phone receiver because of the impact it had on her, and
16    she reported the death threat to the threat response
17    coordinator for the office who reassured her that she was
18    safe and secure in the capitol.
19              The first element is satisfied beyond a
20    reasonable doubt.
21              The second element is also satisfied beyond a
22    reasonable doubt because Ms. Uhrig is a federal employee.
23    The defendant called her worthless, but she is not
24    worthless and the law protects her.  This element is
25    satisfied beyond a reasonable doubt.
```

1          The third element is that the defendant
2    intended to impede, intimidate, interfere or that he
3    intended to retaliate.  This is an obvious common sense
4    conclusion.  The judge, when he was instructing you about
5    reasonable doubt, said that a reasonable doubt, you know,
6    mentioned common sense.  It is a common sense inference
7    that when somebody says I am going to come to your office
8    and kill you that they want to scare you.  They want to
9    intimidate you.  And that is what the defendant wanted in
10   this case, and mission accomplished.  That is what he
11   got.
12          That is what Ms. Uhrig testified about when
13   she described the fear and the panic when she thought
14   about her training and what she had learned about the
15   potential threats to the capitol.  Ms. Uhrig, she was
16   frightened.  She thought the defendant was going to
17   target the capitol.  She was relieved she didn't give her
18   name.  And when she was asked what did you understand the
19   purpose of this call to be, she said intimidation.
20          This is a common sense conclusion.  This is
21   the word that is in your jury instruction, and this is
22   the common sense inference that the person who heard the
23   threat knew that this was used.  This was intimidation.
24          Ms. Harms' testimony confirms that this was a
25   serious statement.  It was perceived and understood as a

1    serious statement.  She testified that Ms. Harms was

2    sheet white and that she was in shock as she was holding

3    the receiver in her hand after receiving the call.

4             The third element is established beyond a

5    reasonable doubt.

6             For Count 3, as I mentioned before, this count

7    applies to the same conduct, but it is charged as a

8    different violation.  The main difference between this

9    count is the previous counts apply to federal employees.

10   This count, Count 3, applies to anybody so long as the

11   threat was transmitted in interstate commerce.  So that

12   is what you see in the elements.

13            First, that the defendant knowingly

14   transmitted in interstate commerce, a telephonic

15   communication containing a threat to injure, and, second,

16   such telephonic communication was transmitted for the

17   purpose of issuing a threat or with knowledge that the

18   communication would be viewed as such.

19            So, the first element, the knowing

20   transmission of a threat, what was a threat for Count 2

21   is also a threat in Count 3.  It was a serious expression

22   as I stated before.

23            When it comes to knowingly, that the call be

24   made knowingly, as the judge instructed you, that means

25   that the phone call was not made by mistake or accident.

1    The phone call was not made by mistake or accident.  The

2    defendant testified that he was calling all of the

3    members of the Congress that are involved with the

4    veterans committees or the armed services committee.  It

5    was not an accident.  It was not that the phone was

6    dialed in his pocket.

7         And the call was transmitted from California

8    to Washington DC.  This is something that the parties

9    have already agreed on.  You will see when you go back

10   and look at the exhibits, Exhibit No. 13 is a

11   stipulation.  That is something that the parties referred

12   to and something that the government read at one point

13   during the trial that this particular call was

14   transmitted from California to Washington DC.

15        And, then, of course, the defendant testified

16   that he was in California during this time, and the

17   witness testified that she was in Washington DC at the

18   capitol.  That element is satisfied beyond a reasonable

19   doubt.

20        The second element goes to his intent.  Why

21   did he make this call?  Why did he say these words, I am

22   coming to your office and I am going to kill you?  What

23   was his purpose?  It is a common sense conclusion that

24   when he intended to communicate what he clearly stated,

25   there was no chance for ambiguity in the way he said it

1    and the tone of his voice and the words that he used, he

2    said these words knowing that it would be perceived as a

3    threat and intending to threaten.

4            When the defendant was testifying, he said

5    that when I call someone a rude name, I expect that they

6    will be affected.  The same applies to this threat.  This

7    defendant knows the language he is using, and he knows

8    the impact it is having on the call recipients.  And that

9    is why he is doing it.

10           The second element is satisfied beyond a

11   reasonable doubt.

12           For Counts 4 through Counts 8, the remaining

13   counts, they all deal with a violation of the same law,

14   and so I am going to explain the elements for the

15   remaining counts one time and then I am going to go

16   through and focus only on the intent element.

17           So the first element is that the defendant

18   made an interstate call.  This element is satisfied with

19   all of the remaining counts, all of the calls.  As I

20   mentioned before, the parties stipulated or agreed that

21   these calls traveled interstate.  And all of the

22   witnesses testified they were in other states, and the

23   defendant testified he was in California.  That element

24   is satisfied with the remaining counts.

25           But the second count, the defendant did not

1    disclose his identity.  That is true of all of the

2    remaining counts.  The defendant never provided his name.

3    Always refused his name and, in fact, blocked his name by

4    dialing star 67.  You will see in the stipulation the

5    parties have agreed that when a caller dials star 67

6    before dialing a phone number, that has the impact of

7    blocking the call recipient from seeing the number.  So

8    that is why when the victims testified that it showed up

9    as outside caller that that was their internal system

10   basically communicating it was a blocked number.

11          The defendant did not disclose his identity.

12   In fact, he actively shielded his identity in many of

13   these calls.

14          Finally, the defendant had to intend to abuse,

15   threaten or harass.  Any one of those things.  Any one of

16   those intents, and that element is satisfied.

17          So with respect to Count 4, this is the same

18   conduct, the September 26th call, but it is charged as a

19   violation of this law because it satisfies those

20   elements, and the defendant certainly had the intent to

21   threaten.  As I have already explained, the words "I am

22   going to come to your office and kill you" is

23   threatening, and that satisfies that element.  So this

24   charge is proven beyond a reasonable doubt.

25          Count 5, this refers to the call on the very

1  next day.  So in considering the context of this call,

2  after the defendant had threatened to murder Ms. Uhrig,

3  the very next day he calls her back, and this was a

4  summary of some of the important highlights from this

5  call.

6          He started talking about cannabis, and she

7  offered to research it, to look into it, to evaluate his

8  position.  She got back on the phone, and she talked

9  about how the senator was involved in financing but she

10 had a specific explanation.  But this did not satisfy

11 him.  That is not what he was looking for.

12         He used profanity, and she told him that his

13 profanity was unwelcome.  She told him if you use that

14 type of language, that I am going to hang up, I am going

15 to terminate the call.  And he responded, well, I am

16 going to call you anyway.

17         He knew, and he told her, I can just call you

18 back and you have to answer, and he did.  He hung up on

19 her, he called back, and, sure enough, she answered.  And

20 this time he wanted her name, first and last.  She

21 wouldn't give it to him.  Understandably so.  And he said

22 he needed her name.  He said he just talked with Allison,

23 he just talked with Sarah and some bitch named Frances

24 who almost cried just a minute ago.  He told her he

25 wanted her name because he was keeping a list of bitches.

1          And, as we know from the other evidence in the

2   case, that was true.  The defendant testified that he

3   never said these words, but he confirmed that he had a

4   list at his house, at his residence where he kept track

5   of the call recipients.  He wrote down their names, and

6   he wrote down, as he described it, his impressions of the

7   call recipients, that they were cunts.

8          Moving on to Count 6, this is the call with

9   Kylie Joe Rutherford, on October 21, 2019.  This is the

10  call where he initially spoke with an intern, was

11  transferred to Ms. Rutherford.  She identified herself,

12  explained what her position was, her title was in the

13  office, and he said -- and the defendant told her she was

14  worthless in the office.  Told her that she sounded

15  uneducated.

16         When she tried to stand up for herself to

17  explain that she did have some education, that she had

18  graduated from college with two degrees, he replied, why

19  are you such a fucking bitch.  She warned him not to use

20  profanity, and that is when he replied, the senator

21  should be assassinated and you are a cunt.

22         He used a mocking tone.  It was hostile.  She

23  felt belittled.  He told her that she sounded like a

24  child.  Ms. Rutherford was very mature in her explanation

25  of this call.  She says we are all humans, sometimes we

1  have bad days, but this call was different.  This was

2  personal.  These words that he used were personal.  He

3  attacked her personally in mocking her voice.

4          The defendant testified that he never mocked

5  anybody, but you know that is not true because you heard

6  the recording, the recording that we will get to in a

7  minute with Allison where he mocked her, where she

8  apologized for the way he felt.  She said, I'm sorry you

9  feel that way, and he replied back, you can't just

10  fucking apologize, how would you like it if I came to

11  your office, and I said, I'm sorry.  And he mocked her.

12          And then he said whaa, to make a crying sound,

13  mocking her.  We know that that testimony is not true,

14  that when he said he doesn't mock people, that is not

15  true.  That is contradicted by the evidence.

16          The defendant also testified when I asked

17  him whether or not he had called this Ms. Rutherford

18  worthless, whether he had called her a child, whether he

19  had called her a cunt.  He had testified that she was

20  arrogant and disrespectful.

21          Ladies and gentlemen, you saw the witnesses

22  testify.  Is that how you would describe that witness, as

23  arrogant and disrespectful?  He believed that he was

24  justified in abusing these victims.

25          The judge defined abuse as shocking or

1    inappropriately harsh, coarse language.  There is no

2    words that are more coarse, inappropriate or harsh or

3    shocking than calling a 25-year-old female who is just

4    answering the phone, calling her a cunt, calling her

5    worthless and uneducated and calling her a fucking bitch.

6    That charge has been proven beyond a reasonable doubt.

7          Moving on to Count 7, this involves the call

8    of October 25th, 2019 when the defendant called Allison

9    Feinswog.  This is the call where Ms. Feinswog testified

10   about some history with the defendant over the month of

11   September.  In fact, in the recording you listened to,

12   the defendant also referenced the entire month of

13   September.  He said for the entire month of September,

14   Allison has been treating me like garbage.  That is what

15   he said.  For the entire month of September.

16          And then, during this particular call, the

17   tenor or the context, the language changed.  He started

18   telling her that she should go die.  So she took out her

19   phone, knowing that this was a different type of call.

20   She took out her phone and started recording.

21          Also, consider why he said, go die.  What

22   was that in response to?  She said, how can I help you.

23   She was trying to be professional.  She had addressed him

24   as sir.  She told him, I'm sorry you feel that way, I'm

25   sorry that has been your experience, and he threw that

 1   back in her office.  Her professionalism, her composure

 2   offended him.  He said, don't sir me to death.  He said

 3   you can't fucking apologize.  And he said, when she said,

 4   how can I help you, he said, go die.  This is his

 5   response when she said, how can I help you.

 6        (Audio played.)

 7        MR. DAHLQUIST:  Ms. Uhrig described this

 8   defendant's voice, his tone as hateful, as venomous.  You

 9   could hear it in his voice.  Having to hear these words,

10   having to listen to this profanity, it is harsh.  It is

11   coarse.  It is shocking, and it is abusive and the

12   defendant is guilty of this offense.

13        After listening, after taking this call, the

14   defendant made a note to himself and, as he described to

15   Ms. Uhrig, his list of bitches.  He made a list to

16   himself that Allison from Congressman Levin's office was

17   a cunt.  He made this note to himself.  He testified just

18   the details to help him understand the importance of the

19   call, the significance of the call, but this is a

20   reflection of how he views these employees that he was

21   calling, that he views them as nothing, as worthless and

22   that he is entitled to abuse, threaten and harass them.

23        Turning to the last count, Count 8, this is

24   the call to Daryl Brady on November 19th, 2019.  This is

25   the call where the defendant called, asked about

1  cannabis, said Phil Roe is trash.  And then once the call

2  recipient, Daryl Brady thought he identified the caller

3  based upon his history and some of the things he had

4  learned, he says, is that you, Robert.  And in being

5  identified, the defendant replies, fuck you, cunt.  You

6  are Tennessee dumb.

7        In this call or in the previous call, the

8  defendant had stated his name was homeless veteran, and,

9  for Mr. Brady, that triggered in his mind, I should help

10  this man.  If he is in Tennessee, I am aware of these

11  homeless shelters, I have this responsibility to the

12  community, I know how I can get him help.  He wanted to

13  connect him.  He wanted to help him.

14        This was -- it was confusing to hear the

15  defendant call his boss Phil Roe garbage, to hear him say

16  that he hated veterans, when he knew differently.  He

17  knew that Phil Roe had been chairman of the armed service

18  committee, that he cared deeply about veterans.

19        And, then, finally, this particular

20  statement.  This is again, harsh, coarse and shockingly

21  abusive language.  Not only that, it is also targeted.

22  It is personal.  The defendant knew next to nothing about

23  Mr. Brady other than hearing his voice.  And you heard

24  his voice.  He spoke with a thick southern accent.

25  Defendant, which is typical of all of these calls, he

```
 1   chose words to maximize, shocking and inappropriately
 2   harsh and coarse impact.
 3          And you heard that it had that effect, that
 4   Mr. Brady had never heard anything like this.  Never
 5   heard the word cunt uttered in his 20 year career as a
 6   public servant.  He assumed that this maybe perhaps was a
 7   West Coast thing.  It is not a West Coast thing.  This is
 8   abusive, shocking and coarse uniformly.
 9          And, then, Mr. Brady was also offended by the
10   Tennessee dumb reference.  Based on this information he
11   had, just hearing his voice, he wanted to basically
12   invoke an offensive stereotype.  As Mr. Brady described,
13   he wanted to call him a dumb hillbilly because of the way
14   his voice sounded which is consistent with the other
15   calls, that he mocked their voices too.  And it is
16   consistent with all the comments.
17          Ladies and gentlemen, words are powerful.
18   Words have the power to uplift, inspire and empower.
19   Words can be weapons to abuse, harass and demean.  And
20   this defendant used his words to abuse, harass and demean
21   every person he could on the opposite end of that phone.
22          And, most of all, he threatened to kill two
23   federal employees with the same language:  I am coming to
24   your office to kill you.  I am going to come to your
25   office and kill you.  You miserable little cunt.  I am
```

```
 1  going to come to your office and kill you.  Fuck you.

 2          The defendant is guilty of each of these

 3  counts, of each of these charges.  Find him guilty.

 4          Thank you.

 5      THE COURT:  It seems like it is about a quarter to

 6  11:00.  Should we take a brief recess?

 7      MR. REED:  Yes, your Honor.

 8      THE COURT:  We will take a brief recess for about

 9  8 or 10 minutes.  Don't talk to each other about anything

10  until you have the case for decision.  Then we will hear

11  from the defendant, and, since the government has the

12  burden of burden of proof, I will give them an

13  opportunity to make a brief rebuttal argument.

14      (Recess from 10:45 to 11:02 a.m.)

15      (The following proceedings were held in the

16       presence of the jury:)

17      THE COURT:  Present with defendant and counsel.

18          We are ready to hear from defendant through

19  Mr. Reed.

20      MR. REED:  Thank you, very much, your Honor.

21          Good morning, ladies and gentlemen.  I would

22  like to thank you for the attention that you have paid to

23  this case.  Mr. Stahlnecker very much appreciates it.

24          I would like to talk to you about three areas

25  this morning.  The first area I would like to talk to you
```

1    about is a juror's duty.  We have heard some of the

2    instructions that the court gave to you, and I wanted to

3    just make a few comments and give you some further

4    insight with respect to your duty as federal judges --

5    jurors, rather.

6         The second area I wanted to talk to you about

7    is the law that applies to this particular case, and when

8    I talk about the law that applies, I may give you some

9    suggested approaches on how to go about your job as a

10   juror to more efficiently allow you to get through these

11   counts because some of them are complicated.  And, then,

12   of course, lastly, obviously, I would like to talk to you

13   about the facts of the case and to show you how those

14   work in to the instructions and the law that you are

15   going to be applying in this matter.

16        The most important thing that jurors should

17   keep in mind is that they are not partisans.  They are

18   totally neutral.  They are not for one side.  They are

19   not for the other side.  They are completely impartial,

20   and when they come in to deliberate on a federal case,

21   the defendant who is ever charged in a particular crime

22   is entitled to have their individual opinion rendered

23   with respect to the verdicts.

24        Now, what does that mean?  That means that if

25   you apply the law as the court instructs and you have

```
 1   found in your mind that you feel that the evidence is
 2   such and that might be in contradiction to another juror
 3   and you feel that your position is correct, a federal
 4   juror does not change their conscientious decision with
 5   respect to what their verdict is because, for example,
 6   they want to get home, it is getting close to
 7   5:00 o'clock, I will miss my bus.  These federal cases
 8   are too important, and we know that you realize that they
 9   are extremely important cases.
10           A defendant is entitled to your individual
11   opinion so that if you feel that your opinion is correct,
12   you stick with your opinion.  The other thing that
13   federal jurors must do, and the court emphasized this, is
14   that they must apply the law.  And some of the law that
15   applies to this case is what is known as the beyond a
16   reasonable doubt law.  And we will talk about that
17   shortly.
18           But they are to apply the law strictly when
19   you are given laws that concern the elements of these
20   particular offenses and some of these offenses, by the
21   way, are pretty complicated which is why I am going to
22   talk about them a little bit later.  When you are given
23   instructions about these laws, you have to take them
24   seriously and really focus in and concentrate and analyze
25   on the elements of the offenses.
```

1          Now, I am not going to spend a lot of time

2   talking about beyond a reasonable doubt.  I am getting

3   now in to talking a little bit about the law.  We know

4   what your jobs as jurors are.  We know that the

5   instruction is self explanatory.  Judge, the court read

6   that instruction to you, and we know that this is not a

7   civil case.  This is a criminal case.  The standard of

8   proof in a criminal case has to be higher.  It has to be

9   high enough for you as jurors to demand the kind of

10  evidence that convinces you beyond a reasonable doubt

11  that the charges are true.

12          Now, why do I bring that up?  In this

13  particular case, let's talk a little bit about the

14  evidence, jump forward.  We have two counts.  The first

15  two counts where alleged death threats were made, threats

16  to murder.  There is no recordings of these calls.  A

17  person doesn't have to have a recording in order to

18  testify about something, but a juror should demand some

19  kind of higher burden of proof when a case is beyond a

20  reasonable doubt.

21          So, when I was asking questions of the

22  witnesses, well, at least, let's see the handwritten

23  notes that you made of the telephone calls, that will

24  help us to make sure that what Mr. Stahlnecker said over

25  the phone is what you accurately say it is.  They were

1    all destroyed.  They are gone.

2              You, as jurors, should demand the type of

3    proof that can convince you beyond a reasonable doubt

4    particularly on these first two counts that the defendant

5    is guilty of making these kinds of threats, but I would

6    suggest to you as we go through the analysis of the law

7    that there is other reasons that you should not find him

8    guilty of these first two counts.

9              Let's talk about a suggested approach on how

10   to approach your tasks, and, since Mr. Stahlnecker is an

11   ex-marine, I think a good allegory, a good analogy, to

12   describing to you how you should go about your job in

13   looking at the elements of these counts is to envision

14   that you are on a marine base and each of these crimes is

15   like an obstacle course.  You are running the obstacle

16   course as a marine, and the first obstacle that you come

17   to are Counts 1 and 2 because they are identical.

18             Now, this particular obstacle that you have

19   got to get over is a particularly high one because there

20   is a lot of complexity to this particular count as

21   opposed to the last four counts.  They are not as

22   complicated, but the first two counts are very

23   complicated counts.  The obstacle is very high, and, in

24   order for you as jurors to find the defendant guilty of

25   those first two counts, you have to climb the obstacle

1  course, find that all the elements have been met, you get

2  halfway up the obstacle course, you found a couple of

3  elements are met, you have got to climb higher, you have

4  to get over it.  You find that the third element is met

5  or whatever and then you jump over it.  If you can't

6  climb the obstacle course as to Counts 1 and 2, the

7  defendant is not guilty.

8         Third count is a threat, death threat count.

9  That count only differs with respect to Counts 1 and 2 as

10  government counsel indicated in that you don't have to

11  threaten an actual government employee, but, essentially,

12  the elements are the same of that count.  So that

13  obstacle, after you have passed the first obstacle, is a

14  little bit lower.  It is a little bit lower.  And, then,

15  when you get to the harassment counts, the 223 counts we

16  call them, those have rather lower obstacles.  You can

17  basically jump over those in terms of determining whether

18  or not those have been met, but we are going to talk

19  about those too, of course.

20         Let's talk about the law as it applies to

21  those first two counts.  It is kind of complicated, and

22  when the government gave you their presentation, of

23  course, they focused on what they allege were the

24  threats, what the words were, and they focus on how the

25  people who received the threats reacted.  They gave a lot

1    of time talking about how they went white, they went to

2    their bosses, but they forgot some important things.

3    They forgot to take into consideration the other part of

4    the story which is the defendant's mental intent.  The

5    mental intent of the defendant is just as important as

6    the reactions and the words that were received by the

7    recipients in this case.  Completely glossed over it.

8              So as we talk about these particular charges,

9    Counts 1 and 2, I want to go through them in the context

10   of Mr. Stahlnecker's intent, his background.  Counts 1

11   and 2, as the government counsel indicated, requires that

12   the threat must be what is called a true threat.  It must

13   be something in which the person says words to you which

14   are not conditional, which are not just expressing your

15   frustrations, that words have to be -- that you are

16   coming to kill the person you are talking to either now

17   or in the very close future.

18             So if I say, for example, words, I think such

19   and such senator should be assassinated, he is doing a

20   bad job.  That is protected speech.  That is not a

21   threat.  If I say something to the effect that a person

22   should go die because they are not doing a good job, that

23   is not a true threat.  That is an expression of

24   frustration.  And that, because of the first amendment,

25   our constitution, is speech which is protected.  A true

1   threat as defined in these two counts requires a lot to

2   be taken into consideration before you can convict

3   somebody.

4          The statement had to have been made under such

5   circumstances that a reasonable person who heard the

6   statement would understand it as a serious expression of

7   an intent to murder that person.  Well, we have evidence

8   that the two recipients of these calls said that that is

9   the way they felt.  That is what is called the objective

10  part of this instruction.  That isn't the defendant's

11  intent.  That is the way they felt.

12         And, so, although we contend in this case that

13  there is a contradiction in what the evidence is in terms

14  of what Mr. Stahlnecker said to these people, he denies

15  that he said that he is coming to murder these people

16  immediately, they believe that that is what he said.  And

17  so that was their reaction.  And that goes to the first

18  element of the instruction that it must have made a

19  reasonable person who heard the statement understand it

20  as a serious expression of an intent.

21         But here is the complexity of the instruction.

22  The defendant must have, in his mind -- you are required

23  to go into the defendant's mind here.  We are not talking

24  now about the mind of the victims.  You are going into

25  the mind of the defendant.  The defendant must have made

 1   the statement intending it to be a threat to a particular

 2   person and with knowledge that would be viewed as a

 3   threat.  And, in order to determine that, you can use all

 4   kinds of evidence to make that determination.

 5          You can use all the evidence that came out in

 6   this case, the instruction goes on to say, to determine

 7   whether or not the defendant threatened the victims, you

 8   can consider the circumstances under which the statement

 9   was made, all the surrounding circumstances.  And it goes

10   on in the next instruction that you will have back there,

11   the ultimate fact of the defendant's intent that you are

12   going to be deciding may be established by circumstantial

13   evidence.

14          Well, in this case, we have better than

15   circumstantial evidence that Mr. Stahlnecker didn't

16   intend those to be true threats.  You heard from him

17   directly.  Directly.  He is the one who is telling you

18   what his intent was.  The government wants you to make

19   all these inferences from all this circumstantial

20   evidence that his intent was to carry out this murder.

21          The intent may be established by

22   circumstantial evidence based upon the defendant's

23   outward manifestations, his words, his conduct, his acts,

24   all the surrounding circumstances disclosed by the

25   evidence and the rational or logical inferences that may

 1  be drawn from them.  All the surrounding circumstances of

 2  the evidence.

 3          So, here, we have you, as good jurors, trying

 4  to figure you out what Mr. Stahlnecker's intent was when

 5  he was making these calls on Counts 1 and 2.  I want you

 6  to closely look at Exhibit 100 when you are deliberating.

 7  And here is this person, with all due respect to

 8  Mr. Stahlnecker, he has been beaten down by the VA.  His

 9  life has resulted in kind of like a pathetic situation.

10  You will see that when you see these pictures.  He is

11  here in this little garage area on this desert property

12  out in Yucca Valley.  You will see the bed where he is

13  allowed to sleep by the tenants of this home.

14          Now, in his mind when, he is making this call,

15  here is what I want you to do.  I want you to pretend you

16  are in his mind.  How can you truly intend to threaten

17  somebody if you don't know who you are talking to.  You

18  don't even know who you are talking to on the telephone.

19  How can the person who is receiving the threat in

20  Mr. Stahlnecker's mind, how can he think that the person

21  who is receiving the threat knows who he even is so as to

22  be afraid of him.  He doesn't know who these people are.

23          It is just as though you have a complaint, for

24  example, you have a defective product, and you are very

25  angry and you are getting on a telephone and you dial up

1     the service representative who answers, let's say in

2     Bangladesh, and they have very nice polite language.

3     Hello, sir, can I help you.  My appliance broke down, my

4     washing machine.  I am very angry.  This is the second

5     time I have called.  May I help you sir, can you give me

6     more information.  You are getting more and more

7     frustrated, but you go on to say, I am going to come kill

8     you.  Do you really intend that to be a threat?  You

9     don't even know who you are talking to.  Some faceless

10    person in Bangladesh.

11          Now, it would be different, a true threat is a

12    true threat, for example, under circumstances where you

13    know the person that you are threatening.  Let's say you

14    have had a terrible argument or an altercation with

15    somebody, and you call them on the telephone.  And you

16    know who they are.  You know their names and you say to

17    them over the telephone, I am coming to kill you, John

18    Smith, or whoever it is.  You know who it is.  That is a

19    true threat.

20          You can't have a true threat under these

21    circumstances.  Mr. Stahlnecker could not have formed the

22    mental intent to intend to kill somebody when he doesn't

23    even know who the person is.

24          So that is why these instructions are so

25    complicated.  That is one of the hurdles that you are

1    going to have to get over when you are on the Marine

2    obstacle course for that very first, very high obstacle,

3    and it can't be overcome in this particular case.  That

4    mental intent element of the case cannot be overcome so

5    that you find that the defendant Mr. Stahlnecker who is

6    in his little garage in Yucca Valley in his mind is

7    thinking that he is making a true threat when he doesn't

8    even know -- and it is uncontroverted.  Everybody agrees

9    that he doesn't know who he is talking with.  That is

10   undisputed in this case.

11           So, therefore, my suggested approach to you is

12   you reach that point of determining whether or not you

13   are going to get over that first obstacle, you see that

14   the government cannot prove that true threat element.  We

15   are not talking about the way the victim reacted.  We are

16   not talking about the fact that they proved they were

17   government employees.  We are talking about the fact that

18   you have to prove the element that in his mind he was

19   making a true threat.

20           If you agree with me, then what you do is you

21   move on to the third count.  You find him not guilty of

22   that count.

23           Now, that third count, as government counsel

24   indicated, is essentially the same as the first two

25   counts except you don't have to have -- be threatening a

1    government employee, but the true threat requirement is

2    still there as the court instructed you.  The true threat

3    requirement is still applicable to Count 3.

4              And so, if you agree with the defense position

5    that Mr. Stahlnecker, in his mind, could not have had the

6    intent to really think that he was threatening somebody,

7    you find him not guilty of that count too as well, Count

8    3.  And then you go on and you consider the other counts.

9              In other words, a true threat also has to be a

10   serious expression of saying that you are going to kill

11   somebody.  If you don't even know who you are talking to,

12   it can't be considered serious.  It was serious according

13   to the victims, but, in terms of the mental intent of the

14   defendant which you have to also decide, can't be

15   considered as a serious expression of an intent to kill.

16             I would like to talk to you a little bit the

17   law that applies to what we call the harassment charges.

18   Those are the last four charges.

19             The government has to prove that

20   Mr. Stahlnecker was making these telephone calls to

21   harass people or to abuse them or to threaten them.  And,

22   Mr. Stahlnecker, you have heard his story.  Let's talk a

23   little bit about his story so that you can understand the

24   context in which these calls were made, something that

25   the government didn't even talk about.

```
 1                The story of Mr. Stahlnecker.  Put yourself in
 2    his shoes.  This man served our country, and the Marines
 3    should have taken an MRI of his ankle when he first came
 4    in with that serious injury.  As I said in my opening
 5    statement, none of us would be here if they just had done
 6    that.  But they didn't.  They gave him an x-ray.  They
 7    told him to go back on duty, and that eventually his pain
 8    became so bad that he had to leave the Marines.
 9                Okay.  That is a terrible thing, but maybe he
10    can rectify.  Now, he can work with the VA.  The VA is
11    supposed to help everybody.  Right.  That is the notion
12    that all the citizens of the United States have of the VA
13    administration.  They immediately and quickly give
14    appointments to people that are veterans, and they take
15    take care of all their problems.  It is common knowledge
16    that there has been a lot of talk politically about how
17    the VA has been improved over the last several years by
18    the current administration so that veterans can get
19    health care in a more quick manner.  Better health care.
20                If they are too far away from a VA hospital,
21    they can sign up and go to a hospital that is closer to
22    them or a medical provider.  So this is the context in
23    which Mr. Stahlnecker was making these calls to the VA
24    way before the current administration.
25                When the VA did not respond to him, they
```

1   ignored him, they wouldn't acknowledge that his injury

2   was even made while he was in the service.  They kept on

3   sloughing him off.  He kept on talking to people on the

4   telephone.  A similar nature into the way he was calling

5   people later at congressional offices.  They are

6   sloughing him off.  They are not giving him any help.

7          And he didn't respectfully start his tragic

8   saga off.  Respectfully.  He did.  He tried to be

9   respectful.  It evolved into some anger.  Then it evolved

10  into futility and frustration.  And then he found that by

11  swearing, maybe people would take action, and it festered

12  and it festered.  And we have a current Mr. Stahlnecker

13  who is before you now who is living in a little garage in

14  the desert and has got a little bed.  That is where he

15  has ended up as a result of the way he has been treated.

16         He starts calling government officials to see

17  if they can help him.  He is angry.  Let's face it.  He

18  is very, very frustrated.  That is uncontroverted.  You

19  can tell that by the language that he uses over the

20  telephone.  And, keep in mind, as we said during the

21  opening statements, that there is a difference between

22  swear words, profanity and threatening communications.

23         So, in our country, people can use the "F"

24  words and the "C" words.  I don't prefer to use them

25  myself, but some people do.  Mr. Stahlnecker has found

```
 1    them to be effective.  I don't endorse them.  I think he
 2    was wrong by doing that with all due respect, but that is
 3    not a crime, thankfully, in our country.  That is not a
 4    crime to use those kinds of words to try to get things
 5    done for yourself.
 6              So he gets on the telephone with these
 7    congressional people, and have you ever had a problem
 8    like a going back to a problem with an appliance and you
 9    call up some kind of service representative and you are
10    talking to them on the phone.  And you want to get to
11    somebody who can really help you, and they get on the
12    phone and they say, good afternoon, politely trying to
13    help you on behalf of XXX Corporation.  We are here
14    because service is our most important product, and they
15    go on and on.  I would like to get my appliance fixed.
16    Well, can you give me more details.  Service is our most
17    important product.  They go on and on with this polite
18    conversation.  It makes you sick.
19              And Mr. Stahlnecker eventually got really
20    frustrated with dealing with interns who would never
21    transfer him over to somebody who could help him with all
22    of his problems about his prosthetics, about not having a
23    primary care doctor, about cannabis -- he believes that
24    cannabis should be made legal -- and about problems that
25    the VA has with the Feres doctrine which allows veterans
```

1    to sue for malpractice which he is very interested in

2    because he believes that there was malpractice by them

3    not taking an MRI when he first had his ankle.

4             And he liked to pursue trying to sue the VA so

5    he could get his back disability which they did not deny

6    him.  He couldn't even get disability for seven years.

7    Can you imagine the frustration in this person?  So what

8    you are doing here is you are judging a person who is

9    frustrated, who is angry.  I want you to take into

10   consideration his mental intent, not only the mental

11   intent of the so-called victims in our case but his

12   mental intent what he has gone through.

13            They never transfer him.  Sir, can we have

14   your address and your phone number, and he doesn't give

15   it to them.  Sir, we can't help you, very polite, with

16   this very sweet, soft language.  And he gets more

17   frustrated and more frustrated so he hangs up, and then

18   he is thinking that if he calls right away, maybe he will

19   get a different intern or person answering the phone.  He

20   is not calling repeatedly to harass the people.  He is

21   calling to see if he can get somebody who can finally

22   help him so that he can be transferred to what is called

23   the veteran liaison.  That is who he is always trying to

24   get through to so he can talk to somebody who has some

25   kind of knowledge of veteran's affairs.

```
 1            And, notice, there is no calls in this case
 2   that involve Mr. Stahlnecker calling any other senators
 3   who weren't on the veterans affairs committee or who had
 4   something to do with veterans affairs.  He doesn't like
 5   to make these phone calls.  Do you think he likes to get
 6   up in the morning and call incessantly to get help?  He
 7   is calling people that are power brokers that can do
 8   something about veterans' affairs.  So they hang up on
 9   him, he calls again.  They slough him off again.  He
10   hangs up.  He calls them again.  Yes.  He uses bad
11   language.  I don't like it.  I know that you don't like
12   it, but it is not a crime.
13            But he is just doing these with the mental
14   intent to get help.  To get help, not to harass.  So what
15   is the most important element that you should consider in
16   what we call these harassment charges.  They are called
17   the 223 counts, and, admittedly, these have lower
18   obstacles.  These are not the big obstacles like the
19   first two counts where there is all these complex
20   elements.  These are a little easier to go through.  They
21   are not as complicated.
22            The first element is that he made an
23   interstate telephone call.  The government, obviously,
24   they proved that.  They agreed to that.  These are
25   interstate telephone calls that he made.
```

```
 1            The second element is pretty simple.  They
 2   proved that.  That the defendant did not disclose his
 3   identity during the telephone calls.  He didn't do it for
 4   some nefarious person because he is evil and he is
 5   planning to go attack somebody so they wouldn't have his
 6   name.  He doesn't feel that he needs to give these people
 7   his name.  He wants to just be transferred to the liaison
 8   officer, and in his mind he is going crazy.
 9            Here is the big one right now that you are
10   going to spend most of your time on.  Third, the
11   defendant intended to abuse, to abuse, intended in his
12   mind to abuse, threaten or harass any person at the
13   called number.
14            Now, what is the definition of harass?  You
15   are going to have to determine whether or not
16   Mr. Stahlnecker was making these calls for the reasons
17   that we say that he is making the calls which is he is
18   trying to get help.  He is not doing it intentionally to
19   abuse or harass.  Although, I don't like his language,
20   and neither do you.  But he is trying to get help.  He is
21   not trying to evoke some kind of negative response on the
22   other end of the phone.
23            In order to harass, you have to conclude that
24   the defendant intended to harass.  That is the next
25   instruction that gives you the definition of the
```

1    defendant's intent on these harassment charges.

2             This is where you are probably going to be

3    spending most of your time talking.  You have to conclude

4    that the defendant intended to harass.  You are required

5    to find that the defendant had the specific intent, his

6    intent, to provoke adverse reactions in the called

7    parties.  Defendant had to have an intent to provoke

8    adverse reactions in the called parties.  He didn't have

9    that intent.  Although, he used lousy language.  What his

10   intent was to get help, please transfer me to the veteran

11   liaison.  So you should find him not guilty of those

12   counts as well.

13            So, in conclusion, ladies and gentlemen, I am

14   looking at the well of our courtroom, and that is an area

15   of the courtroom right in front of the argument tables.

16   It is between the two tables between where the defense

17   sits and where the government sits, and it is in front of

18   the court's bench.  We call this the well.  And I am

19   looking into this well, and you know what I see in the

20   well, I see a giant elephant.

21            There is an elephant in this room, let's face

22   it, and we got to handle this elephant.  We can't not

23   talk about it.  The elephant isn't that Mr. Stahlnecker

24   is guilty of these crimes because he is not.  He doesn't

25   have the mental intent to do any of these things.  The

```
 1   elephant in the room is -- and with all due respect to my
 2   client, I like him very much -- he has got mental
 3   problems, mental problems that have been festering for
 4   years of fighting with the VA.  And I think you can see
 5   that by just the evidence in this case.  He is not guilty
 6   of crimes, but he needs mental treatment.  And that is
 7   the elephant in the room?
 8        MR. DAHLQUIST:  Objection, your Honor.  It is
 9   improper argument.
10        THE COURT:  You can argue his state of mind as
11   much as you want from the evidence, but if you are
12   implying some sort of mental defect or insanity which
13   prevents him from following the requisite intent that is
14   not an issue.
15        MR. REED:  Very well, your Honor.  I leave you
16   with that statement, ladies and gentlemen.  So I ask you,
17   I ask you on behalf of Mr. Stahlnecker, after you see
18   what he has gone through, after you have seen his living
19   conditions, find him not guilty of all these counts.
20            Thank you.
21        THE COURT:  Wish to make a brief rebuttal
22   argument?
23        MR. DAHLQUIST:  Yes, your Honor.  I do.
24            We are not here today because the defendant
25   injured his ankle in 1998.  We are here today because the
```

1     defendant threatened to murder two federal employees and

2     harass and abuse three others in 2019.

3              The defendant raises this issue of mental

4     state.  We know what the defendant's intent was because

5     he stated on cross-examination, he testified that he knew

6     how his conduct would be perceived.  He said he knew that

7     when he called someone a rude name that he would expect

8     that they would be offended.  He had contemplated how his

9     words and actions impacted other people, and he did it

10    anyway.

11             He also knew -- we also know what his intent

12    was because his words were perfectly clear.  There is no

13    ambiguity.  There is no question.  He said, I am going to

14    come to your office and I am going to kill you.

15             We also know that he knew his words were a

16    threat because he got up there and he denied it.  He

17    stated he never said kill, and you know that that is not

18    consist with the evidence, that that is a lie.  You know

19    that both of these witnesses, the two witnesses testified

20    consistently to essentially the same threat.  The only

21    difference was the profanity or the expletives at the

22    end.

23             The defense talks about how there is no

24    recording, but that is not required.  You can evaluate

25    the witnesses and you can evaluate whether their

1    testimony was credible.  You can decide whether you

2    believe them or not.  You have no reason not to believe

3    them.  When evaluating the judge's instructions on

4    credibility, there is no basis for bias.  There is no

5    reason for them to lie.  There is no motive for them to

6    fabricate.

7            The defendant also argues that this can't be a

8    real threat because he didn't know the identity, the

9    first and last name of the victim.  So, first of all, the

10   defendant can have his own theories, he can have his own

11   explanations, but he can't make up his own law.  That is

12   why the judge has instructed you, and that is not part of

13   the instruction.

14           But, second, that ignores an obvious fact that

15   when you threaten somebody, when you threaten to murder

16   someone, in some ways, it is more intimidating when they

17   don't know the identity because it is senseless violence.

18   Coming to an office to kill somebody is senseless

19   violence.  It is more scary than something specific or

20   targeted to a specific individual.

21           Then, finally, when it comes to his intent.

22   You know, he says that he was just trying to get

23   transferred, but that is not what the evidence has shown.

24   He wasn't trying to get anything done.  That is why all

25   of the witnesses testified they were confused at the

1    purpose of the call, that they thought he was menacing,

2    degrading, belittling, angry.

3            And it was also undercut by the fact that he

4    had actually spoken with a veterans caseworker in the

5    first call, August 29th, 2019.  This is a person who is

6    proud of the work that she has done for veterans for

7    securing over $500,000 in benefits for veterans.  And you

8    also have the call from Ms. Feinswog when she said she

9    wanted to pass a message along to the congressman, and he

10   said, I don't want to give you a message of anything.

11           The defendant had no purpose other than to

12   threaten, abuse, harass and intimidate.  And he is

13   guilty.  Thank you.

14       THE COURT:  Okay.  When you begin your

15   deliberations, elect one member of the jury as your

16   foreperson who will preside over the deliberations and

17   speak for you here in court.  You will then discuss the

18   case with your fellow jurors to reach agreement if you

19   can do so.

20           Your verdict whether guilty or not guilty must

21   be unanimous.  Each of you must decide the case for

22   yourself, but you should do so only after you have

23   considered all the evidence, discussed it fully with the

24   other jurors and listened to the views of your fellow

25   jurors.  Do not be afraid to change your opinion if the

1   discussion persuades you that you should, but do not come

2   to a decision simply because other jurors think it is

3   right.

4          It is important that you attempt to reach a

5   unanimous verdict but, of course, only if each of you can

6   do so after having made your own conscientious decision.

7   Do not change an honest belief about the weight and

8   effect of the evidence simply to reach a verdict.

9          Perform these duties fairly and impartially.

10  Do not allow personal likes or dislikes, sympathy

11  prejudice, fear or public opinion to influence you.  You

12  should also not be influenced by any person's race,

13  color, religion, national ancestry or gender.  It is your

14  duty as jurors to consult with one another and to

15  deliberate with one another with a view towards reaching

16  an agreement if you can do so.  During your

17  deliberations, you should not hesitate to reexamine your

18  own views and change your opinion if you became persuaded

19  that it is wrong.

20         As I previously told you, your verdict can

21  only be based upon the evidence in this case and nothing

22  else, and I warned you against consulting any outside

23  means such as electronic e-mail, et cetera.

24         Each of you -- some of you have taken notes

25  during the trial.  Whether or not you took notes, you

1    should rely on your own memory of what was said.  Notes

2    are only to assist your memory.  You should not be overly

3    influenced by your notes or those of your fellow jurors.

4            The punishment provided by law for this crime

5    is for the court to decide.  You may not consider

6    punishment in deciding whether the government has proved

7    its case against the defendant beyond a reasonable doubt.

8            A verdict form has been prepared for you.

9    After you have reached unanimous agreement on a verdict,

10   your foreperson should complete the verdict form

11   according to your deliberations, sign and date it, and

12   advise the clerk that you are ready to return to the

13   courtroom.

14           If it becomes necessary during your

15   deliberations to communicate with me, you may send a note

16   through the clerk signed by any one or more of you.  No

17   member of the jury should ever attempt to communicate

18   with me except by a signed writing, and I will respond to

19   the jury concerning the case only in writing or here in

20   court.

21           If you send out a question, I will consult

22   with the lawyers before answering it which may take some

23   time.  You may continue your deliberations while waiting

24   for the answer to any question.

25           Remember that you are not to tell anyone

1   including me how the jury stands numerically or otherwise

2   on any question submitted to you including the question

3   of the guilt of the defendant until after you have

4   reached unanimous verdict or been discharged.

5           Will the bailiff come forward.

6       THE CLERK:  Bailiff, please come forward and stand

7   behind the court reporter.

8           Please state and spell your name for the

9   record.

10      THE BAILIFF:  Dwayne Taylor, D-W-A-Y-N-E,

11  T-A-Y-L-O-R.

12      (The bailiff was sworn.)

13      THE CLERK:  Thank you.

14      THE COURT:  Alternates James and Hernandez, the

15  rules don't allow you to deliberate.  I know you probably

16  wanted to after listening to the evidence, but I have to

17  discharge you at this time.

18          Before I do that, I want to thank you for your

19  willingness to serve.  And your willingness to serve as

20  an alternate is important because there are occasions

21  when we have to call upon you, and, if not for your

22  presence, we would have a very difficult time.  So my

23  thanks for your service.

24          Do you have any things in the jury room?

25  Would you go there first, retrieve what you have and then

1    depart, and then the other jurors can go to the jury

2    room.

3              Thank you, again.

4         (Recess from 11:43 to 12:59 p.m.)

5         (The following proceedings were held outside the

6          presence of the jury:)

7         THE COURT:  Present with the counsel and the

8    defendant.  We received Jury Note No. 1, and I trust you

9    have seen it.  It says, can we review the e-mails that

10   were presented to the witnesses as transcribed notes.

11   And the second part is can we hear the voicemails again

12   and signed by, it looks like -- who is the foreperson?

13        THE CLERK:  I believe it is Juror No. 9, your

14   Honor.  Mr. Montgomery.  He is the gentleman who sits in

15   the second row.

16        THE COURT:  Oh, yes.  Mr. Montgomery.

17             And my inclinations -- I will hear from the

18   parties -- would be to tell them that they can't view the

19   e-mails because my recollection is they were not put into

20   evidence, but I would allow the jury to come back into

21   the courtroom and hear the voicemails.

22             Is that consistent with the parties' view?

23        MR. DAHLQUIST:  Yes, your Honor.  We would also

24   request that the court instruct the jury as to

25   instruction No. 4 that the evidence is the testimony and

1    the admitted exhibits.

2         THE COURT:  I don't think it is necessary.  I

3    mean, I told them that.  So I don't want to start

4    emphasizing one instruction as against another.

5         MR. DAHLQUIST:  Very well, your Honor.

6         THE COURT:  Told them that several times.  So why

7    don't we have -- is that voicemail set up?  Is that

8    apparatus set up so we can play the voicemails?

9         MR. DAHLQUIST:  Yes, your Honor.

10        THE COURT:  All right.  Then, bring the jury.

11        MR. DAHLQUIST:  Your Honor, there is two

12   voicemails.

13        THE COURT:  They said plural, voicemails.

14        MR. DAHLQUIST:  Very well, your Honor.

15        (The following proceedings were held in the

16        presence of the jury:)

17        THE COURT:  Okay.  Members of the jury, I did

18   receive your note.  I believe it was signed by

19   Mr. Montgomery.  Am I correct?

20            I'm sorry.  Mr. MacDonald.  That would be

21   Juror No. 7, is it?

22        THE CLERK:  Yes, your Honor.

23        THE COURT:  Yes.  And with regard to the first

24   part of your question, the e-mails were not put into

25   evidence so I can't have you see those, but the

1    voicemails were so I am going to have those played for

2    you now.

3            (Audio played.)

4            MR. DAHLQUIST:  Your Honor, this is Exhibit 6.  It

5    started halfway through.  We are going to replay it.

6            THE COURT:  Okay.

7            MR. DAHLQUIST:  Now playing Exhibit 7, your Honor.

8            (Audio played.)

9            THE COURT:  Okay.  So you can resume your

10   deliberations.  Thank you.

11           (Recess from 1:05 to 2:37 p.m.)

12           (The following proceedings were held outside the

13            presence of the jury:)

14           THE COURT:  Present with counsel and the

15   defendant.  We received another note, and you have read

16   it.  It says, we would like the Section 115(a)(1)(B),

17   Title 18 definition, and then it says definition of

18   threat is per the charge 1, 2 and 3.

19              My inclination would be to respond as follows:

20   That the definition of threat is in the instructions and

21   that the -- and as you said in your note, that definition

22   applies to Counts 1, 2 and 3.

23              What else can I say?

24           MR. DAHLQUIST:  Just based on reading that first

25   part of the question, I think there also may be a

1   question as to the elements of --

2        THE COURT:  Well, that is in the instructions.  I

3   will tell them -- I will start out by saying that your

4   note can be answered by the instructions, and the

5   definition of threat, the same definition of threat does

6   apply to Counts 1, 2 and 3.

7            Okay.  Give the jury the note.

8        (Recess from 2:45 to 3:14 p.m.)

9        THE COURT:  We are present with counsel and and

10  the defendant.  We received another note.  I trust you

11  have seen it.  Can they see the transcripts of Uhrig and

12  Karajh.  I mean, my answer is going to be that there

13  isn't a transcript available.  That is one thing.

14            Second, I mean it was a one day trial.  I

15  mean, generally speaking, unless there is some

16  exceptional reason, there is no reason why the jury

17  should need a transcript, but the more important reason

18  is that there isn't one available.  So that is what I am

19  going to tell the jury.

20       MR. DAHLQUIST:  Your Honor, the government would

21  request that the jury be offered the opportunity to have

22  a read back of the testimony that they are requesting.

23       THE COURT:  I am not going to answer the question

24  in any way other than the way they asked it.

25            If they ask for a read back, I will consider

1  it.

2      (Recess from 3:15 to 5:12 p.m.)

3      (The following proceedings were held in the

4       presence of the jury:)

5      THE COURT:  Jury are present.  Present with the

6  defendant and counsel, and the jury has given us a note

7  saying they have reached a unanimous verdict.

8          Would Mr. MacDonald please hand the verdict to

9  Mr. Cruz.

10     (Pause in proceedings.)

11     THE COURT:  The verdict as to Count 1 is not

12 guilty; Count 2, not guilty; Count 3, guilty; Count 4,

13 guilty; Count 5, guilty; Count 6, guilty, Count 7,

14 guilty, Count 8, guilty.

15         It is signed by Mr. MacDonald as foreperson

16 dated February 12, 2020 at Los Angeles, California.

17         Is that the verdict so say each of you?

18     (The jurors answered in the affirmative.)

19      THE COURT:  Does the defendant wish the jury

20 polled?

21      MR. REED:  No, your Honor.

22     THE COURT:  Thank you.

23         Thank you very much, members of the jury, for

24 your careful attention to the case and for your

25 participation in a vital process in our democracy.  The

```
 1    court is very appreciative of your time, your
 2    punctuality.  I tried to be punctual and efficient.  I
 3    hope I was, and I hope your experience was pleasant.
 4    Thank you, again.
 5          (The following proceedings were held outside the
 6           presence of the jury:)
 7          THE CLERK:  Sentencing, counsel?
 8          MR. REED:  Would May 6th be satisfactory?
 9          THE COURT:  Sentencing is set for May 4th.  The
10    defendant is referred to the probation department for
11    preparation of a presentence report.  Okay.
12          (Proceedings concluded.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1                        CERTIFICATE

2

3

4    I hereby certify that pursuant to Section 753, Title 28,

5    United States Code, the foregoing is a true and correct

6    transcript of the stenographically reported proceedings held

7    in the above-entitled matter and that the transcript page

8    format is in conformance with the regulations of the

9    Judicial Conference of the United States.

10   Date:  September 4, 2020

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**MR. DAHLQUIST: [17]** 5/10
6/21 19/5 20/25 21/4 38/6
61/7 61/22 68/22 69/4 69/8
69/10 69/13 70/3 70/6 70/23
71/19
**MR. REED: [9]** 4/21 5/6 6/24
7/3 41/6 41/19 61/14 72/20
73/7
**MR. TRISOTTO: [6]** 7/9 7/12
7/18 7/23 8/1 8/4
**THE BAILIFF: [1]** 67/9
**THE CLERK: [6]** 7/6 67/5
67/12 68/12 69/21 73/6
**THE COURT: [42]**

**$**

**$500,000 [1]** 64/7

**/**

**/s [1]** 74/12

**1**

**10 [2]** 7/22 41/9
**100 [1]** 50/6
**10:45 [1]** 41/14
**10th [1]** 2/5
**115 [6]** 4/17 5/2 5/17 7/2
13/23 70/16
**11:00 [1]** 41/6
**11:02 [1]** 41/14
**11:43 [1]** 68/4
**12 [6]** 1/16 4/1 7/11 7/16
7/17 72/16
**12:59 [1]** 68/4
**13 [9]** 5/18 5/24 6/5 7/11
7/15 7/20 7/22 7/25 31/10
**15 [1]** 7/25
**18 [3]** 13/22 16/14 70/17
**19 [1]** 3/13
**19-394 [1]** 1/8
**1998 [1]** 61/25
**19th [1]** 38/24
**1:05 [1]** 70/11
**1st [1]** 1/21

**2**

**20 [1]** 40/5
**200 [1]** 2/6
**2019 [7]** 20/19 25/14 35/9
37/8 38/24 62/2 64/5
**2020 [4]** 1/16 4/1 72/16
74/10
**21 [1]** 35/9
**223 [3]** 17/21 46/15 58/17
**25-year-old [1]** 37/3
**25th [1]** 37/8
**26th [2]** 25/14 33/18
**28 [1]** 74/4
**29 [1]** 4/17
**29th [3]** 20/19 22/13 64/5
**2:37 [1]** 70/11
**2:45 [1]** 71/8

**3**

**3404 [1]** 2/5
**350 [1]** 1/21
**3699 [1]** 2/11
**394 [1]** 1/8
**3:14 [1]** 71/8
**3:15 [1]** 72/2

**4**

**41 [1]** 3/14
**43 [1]** 17/21
**4311 [1]** 1/21
**4th [1]** 73/9

**5**

**5:00 o'clock [1]** 43/7
**5:12 [1]** 72/2

**6**

**62 [1]** 3/15
**67 [2]** 33/4 33/5
**6th [1]** 73/8

**7**

**75 [1]** 16/14
**753 [1]** 74/4

**8**

**850 [1]** 2/11

**9**

**90010 [1]** 2/12
**90012 [1]** 1/22
**92501 [1]** 2/6
**9858 [2]** 1/20 74/12
**9:42 [1]** 4/2

**A**

**a.m [2]** 4/2 41/14
**ability [5]** 11/23 15/10
21/14 21/14 26/3
**about [62]**
**above [1]** 74/7
**above-entitled [1]** 74/7
**abuse [17]** 18/2 18/4 18/7
18/15 18/24 33/14 36/25
38/22 40/19 40/20 53/21
59/11 59/11 59/12 59/19 62/2
64/12
**abused [1]** 19/6
**abusing [2]** 6/20 36/24
**abusive [3]** 38/11 39/21 40/8
**accent [1]** 39/24
**accept [1]** 12/20
**accident [4]** 17/8 30/25 31/1
31/5
**accomplished [1]** 29/10
**according [2]** 53/12 66/11
**account [3]** 11/22 14/11
15/21
**accurately [1]** 44/25
**accused [1]** 23/2
**acknowledge [1]** 55/1
**act [6]** 16/3 16/4 17/6 17/7
17/7 26/6
**acted [6]** 14/7 14/10 15/17
17/11 18/15 18/24
**action [1]** 55/11
**actions [1]** 62/9
**actively [1]** 33/12
**acts [4]** 16/8 17/9 24/20
49/23
**actual [1]** 46/11
**actually [2]** 18/22 64/4
**addition [2]** 7/19 9/13 14/24
**address [1]** 57/14
**addressed [2]** 26/12 37/23
**administration [3]** 54/13
54/18 54/24
**admitted [1]** 69/1
**admittedly [1]** 58/17
**adverse [4]** 18/11 18/13 60/6
60/8
**advise [1]** 66/12
**affairs [4]** 57/25 58/3 58/4
58/8
**affect [1]** 15/24
**affected [1]** 32/6
**affirmative [1]** 72/18
**aforethought [2]** 6/1 15/12
**afraid [3]** 25/8 50/22 64/25
**after [16]** 10/1 10/5 19/1

23/4 30/3 34/2 38/13 38/13
49/6 54/1 58/4 65/5 65/6
66/9 67/3 67/16
**aftermath [1]** 28/10
**afternoon [1]** 56/12
**again [12]** 6/6 23/1 26/1
26/4 26/7 39/20 58/9 58/9
58/10 68/3 68/11 73/4
**against [8]** 13/8 14/11 15/20
18/17 21/8 65/22 66/7 69/4
**ago [1]** 34/24
**agree [7]** 5/7 5/11 8/5 8/23
18/23 52/20 53/4
**agreed [5]** 10/12 31/9 32/20
33/5 58/24
**agreement [3]** 64/18 65/16
66/9
**agrees [1]** 52/8
**all [54]**
**allege [1]** 46/23
**alleged [4]** 13/13 13/16 14/5
44/15
**allegory [1]** 45/11
**Allison [6]** 19/18 34/22 36/7
37/8 37/14 38/16
**allow [4]** 42/10 65/10 67/15
68/20
**allowed [1]** 50/13
**allows [1]** 56/25
**almost [2]** 19/19 34/24
**along [2]** 17/9 64/9
**already [2]** 31/9 33/21
**also [32]** 6/5 7/15 7/20 7/24
12/11 21/10 21/25 21/25 22/8
23/16 24/9 24/14 26/9 28/2
28/21 30/21 36/16 37/12
37/21 39/21 40/9 53/9 53/14
62/11 62/11 62/15 63/7 64/3
64/8 65/12 68/23 70/25
**alter [1]** 27/12
**altercation [1]** 51/14
**alternate [1]** 67/20
**Alternates [1]** 67/14
**although [5]** 10/19 13/14
48/12 59/19 60/9
**always [2]** 33/3 57/23
**am [42]**
**ambiguity [2]** 31/25 62/13
**amendment [1]** 47/24
**America [2]** 1/6 2/3
**amongst [1]** 4/25
**analogy [1]** 45/11
**analysis [2]** 17/12 45/6
**analyze [1]** 43/24
**ancestry [1]** 65/13
**ANGELES [5]** 1/15 1/22 2/12
4/1 72/16
**anger [1]** 55/9
**angry [8]** 22/23 22/24 23/4
50/25 51/4 55/17 57/9 64/2
**ankle [3]** 54/3 57/3 61/25
**anonymous [1]** 17/19
**another [10]** 5/25 11/12
15/12 17/3 43/2 65/14 65/15
69/4 70/15 71/10
**answer [7]** 19/22 19/23 20/2
34/18 66/24 71/12 71/23
**answered [3]** 34/19 71/4
72/18
**answering [3]** 37/4 57/19
66/22
**answers [2]** 10/20 51/1
**anxiety [1]** 28/7
**any [36]** 5/8 6/16 8/24 9/4
9/14 10/10 10/11 11/2 11/14
11/17 11/22 12/2 12/2 12/5
13/2 13/6 13/11 18/3 18/5
18/7 18/8 18/21 27/15 33/15
33/15 55/6 58/2 59/12 60/25

**A**

any... [7] 65/12 65/22 66/16
66/24 67/2 67/24 71/24
anybody [3] 27/17 30/10 36/5
anyone [2] 5/15 66/25
anything [8] 9/4 11/3 12/17
23/14 40/4 41/9 63/24 64/10
anyway [2] 34/16 62/10
apologize [2] 36/10 38/3
apologized [1] 36/8
apparatus [1] 69/8
APPEARANCES [1] 2/1
appliance [3] 51/3 56/8
56/15
applicable [1] 53/3
applies [10] 8/17 30/7 30/10
32/6 42/7 42/8 43/15 46/20
53/17 70/22
apply [6] 8/21 30/9 42/25
43/14 43/18 71/6
applying [1] 42/15
appointments [1] 54/14
appreciates [1] 41/23
appreciative [1] 73/1
approach [3] 45/9 45/10
52/11
approaches [1] 42/9
are [125]
area [4] 41/25 42/6 50/11
60/14
areas [1] 41/24
aren't [1] 6/19
argue [1] 61/10
argued [1] 6/11
argues [1] 63/7
argument [5] 41/13 51/14
60/15 61/9 61/22
arguments [6] 3/12 8/16
10/17 10/23 19/1 19/3
arise [1] 9/23
armed [2] 31/4 39/17
arrogant [2] 36/20 36/23
as [100]
ask [4] 4/15 61/16 61/17
71/25
asked [5] 24/3 29/18 36/16
38/25 71/24
asking [2] 26/13 44/21
assassinated [2] 35/21 47/19
assault [9] 5/2 5/3 5/21
5/22 5/24 7/14 7/22 20/24
25/22
assist [1] 66/2
assumed [1] 40/6
attack [1] 59/5
attacked [1] 36/3
attempt [2] 65/4 66/17
attention [2] 41/22 72/24
ATTORNEY'S [1] 2/4
audience [1] 19/21
Audio [3] 38/6 70/3 70/8
August [3] 20/19 22/13 64/5
August 29th [3] 20/19 22/13
64/5
AUSA [1] 2/5
available [2] 71/13 71/18
await [1] 19/2
aware [2] 17/7 39/10
away [2] 54/20 57/18

**B**

back [18] 6/6 20/1 22/25
26/23 31/9 34/3 34/8 34/18
34/19 36/9 38/1 49/10 54/7
56/8 57/5 68/20 71/22 71/25
background [1] 47/10
bad [4] 36/1 47/20 54/8
58/10

Bagdasarian [2] 6/6 6/9
Bahrain [3] 46/25 47/3 47/7
Bangladesh [2] 51/2 51/10
base [1] 45/14
based [10] 9/21 9/22 16/6
24/18 24/19 39/3 40/10 49/22
65/21 70/24
basically [3] 33/10 40/11
46/17
basis [1] 63/4
be [87]
bear [1] 12/6
beat [1] 5/9
beaten [1] 50/8
became [2] 54/8 65/18
because [34] 6/16 8/4 12/14
20/2 20/15 22/20 26/22 28/12
28/15 28/22 33/19 34/25 36/5
40/13 42/11 43/5 45/17 45/19
47/22 47/24 56/14 57/2 59/4
60/24 61/24 61/25 62/4 62/12
62/16 63/8 63/17 65/2 67/20
68/19
becomes [1] 66/14
bed [2] 50/12 55/14
been [15] 14/21 37/6 37/14
37/25 39/17 46/1 46/18 48/4
50/8 54/16 54/17 55/15 61/3
66/8 67/4
before [12] 4/14 9/1 26/4
30/6 30/22 32/20 33/6 48/2
54/24 55/13 66/22 67/18
begin [1] 64/14
behalf [4] 2/3 2/9 56/13
61/17
behind [2] 19/14 67/7
being [3] 6/1 15/12 39/4
belief [1] 65/7
believability [2] 12/6 27/13
believable [1] 12/24
believe [9] 11/19 11/20
11/20 12/17 48/16 63/2 63/2
68/13 69/18
believed [2] 24/6 36/23
believes [2] 56/23 57/2
belittled [1] 35/23
belittling [1] 64/2
bench [1] 60/18
benefits [1] 64/7
best [3] 23/18 28/3 28/4
better [2] 49/14 54/19
between [6] 11/15 24/17 30/8
55/21 60/16 60/16
beyond [33] 5/20 9/12 9/16
9/18 9/20 10/2 10/6 13/15
14/1 14/14 15/16 16/18 17/24
20/20 24/7 24/9 24/12 24/14
25/10 28/19 28/21 28/25 30/4
31/18 32/10 33/24 37/6 43/15
44/2 44/10 44/19 45/3 66/7
bias [2] 12/2 63/4
big [2] 58/18 59/9
bit [7] 43/22 44/3 44/13
46/14 46/14 53/16 53/23
bitch [4] 19/18 34/23 35/19
37/5
bitches [2] 34/25 38/15
blocked [3] 19/14 33/3 33/10
blocking [1] 33/7
bodily [2] 14/17 21/21
boss [1] 39/15
bosses [1] 47/2
both [3] 4/9 11/13 62/19
Boulevard [1] 2/11
Brady [7] 38/24 39/2 39/9
39/23 40/4 40/9 40/12
brief [5] 19/2 41/6 41/8
41/13 61/21
bring [2] 44/12 69/10

broke [1] 51/3
Brown's [1] 25/15
burden [4] 9/15 41/12 41/12
44/19
bus [1] 43/7

**C**

CA [3] 1/22 2/6 2/12
CALIFORNIA [9] 1/2 1/15 4/1
22/17 31/7 31/14 31/16 32/23
72/16
call [61]
called [27] 18/3 18/5 18/9
18/12 18/13 18/17 18/20
22/14 22/25 26/23 28/23
34/19 36/17 36/18 37/9 37/8
38/25 47/12 48/9 51/5 57/11
57/22 58/16 59/13 60/6 60/8
62/7
caller [7] 25/9 25/15 26/12
28/4 33/5 33/9 39/2
calling [12] 31/2 37/3 37/4
37/4 37/5 38/21 55/4 55/16
57/20 57/21 58/2 58/7
calls [27] 17/2 25/13 25/14
25/17 26/11 32/19 32/21
33/13 34/3 39/25 40/15 44/16
44/23 48/8 50/5 53/20 53/24
54/23 57/18 58/1 58/5 58/9
58/10 58/25 59/3 59/16 59/17
calm [1] 25/7
came [3] 36/10 49/5 54/3
can [58]
can't [13] 36/9 38/3 46/5
51/20 52/3 53/12 53/14 57/15
60/22 63/7 63/11 68/18 69/25
cannabis [4] 34/6 39/1 56/23
56/24
cannot [2] 52/4 52/14
capitol [4] 28/18 29/15
29/17 31/18
captive [1] 19/21
Car [5] 23/17 24/10 25/3
27/7 27/18
care [5] 23/2 54/15 54/19
54/19 56/23
cared [1] 39/18
career [1] 40/5
careful [4] 9/23 10/1 10/5
72/24
careless [2] 14/18 21/22
carry [8] 15/9 15/11 17/1
21/13 21/14 24/2 26/2 49/20
case [44]
cases [2] 43/7 43/9
caseworker [1] 64/4
CENTRAL [1] 1/2
certain [1] 13/13
certainly [1] 33/20
CERTIFICATE [1] 74/1
certify [1] 74/4
cetera [1] 65/23
chairman [1] 39/17
chance [1] 31/25
change [4] 43/4 64/25 65/7
65/18
changed [1] 37/17
charge [7] 13/25 16/17 17/23
25/20 33/24 37/6 70/18
charged [14] 13/7 13/8 13/19
13/20 16/11 17/18 20/6 21/15
21/16 25/17 25/18 30/7 33/18
42/21
charges [12] 9/10 9/16 13/4
13/12 25/16 41/3 44/11 47/8
53/17 53/18 58/16 60/1
child [2] 35/24 36/18
choose [1] 12/17

**C**

chose [1]   40/1
Circuit [1]   6/7
circumstances [11]
 15/5 16/8 24/21 48/5 49/8
 49/9 49/24 50/1 51/12 51/21
circumstantial [11]   11/7
 11/10 11/13 11/16 16/6 24/16
 24/17 49/12 49/15 49/19
 49/22
citizens [1]   54/12
civil [1]   44/7
clarify [1]   7/10
clear [3]   23/6 24/22 62/12
clearly [1]   31/24
clerk [2]   66/12 66/16
client [1]   61/2
climb [3]   45/25 46/3 46/6
close [2]   43/6 47/17
closely [1]   50/6
closer [1]   54/21
closing [2]   3/12 10/23
co [1]   23/23
co-workers [1]   23/23
coarse [7]   18/16 37/1 37/2
 38/11 39/20 40/2 40/8
Coast [2]   40/7 40/7
code [5]   13/22 16/15 17/21
 26/19 74/5
colleague [1]   19/17
college [1]   35/18
collision [1]   16/1
color [1]   65/13
come [20]   6/18 6/23 6/24
 16/1 23/6 24/24 27/2 27/6
 29/7 33/22 40/24 41/1 42/20
 45/16 51/7 62/14 65/1 67/5
 67/6 68/20
comes [3]   21/18 30/23 63/21
coming [8]   5/8 25/9 31/22
 40/23 47/16 48/15 51/17
 63/18
comments [2]   40/16 42/3
commerce [6]   16/13 16/19
 17/1 17/6 30/11 30/14
commit [1]   26/5
committed [3]   13/13 13/16
 13/18
committee [3]   31/4 39/18
 58/3
committees [1]   31/4
common [8]   9/22 29/3 29/6
 29/6 29/20 29/22 31/23 54/15
communicate [7]   18/19 24/23
 24/25 25/1 31/24 66/15 66/17
communicating [1]   33/10
communication [9]   16/13
 16/20 16/21 16/23 17/5 17/15
 30/15 30/16 30/18
communications [1]   55/22
community [1]   39/12
complaint [1]   50/23
complete [2]   19/1 66/10
completely [2]   42/19 47/7
complex [1]   58/19
complexity [2]   45/20 48/21
complicated [7]   42/11 43/21
 45/22 45/23 46/21 51/25
 58/21
composure [1]   38/1
concentrate [1]   43/24
concern [2]   23/22 43/19
concerning [1]   66/19
concerns [1]   5/2
conclude [5]   18/9 18/14
 18/17 59/23 60/3
concluded [1]   73/12
conclusion [5]   22/5 29/4

29/20 31/23 60/13
conditional [1]   60/13
conditions [1]   61/19
conduct [9]   13/6 16/8 19/11
 24/20 25/19 30/7 33/18 49/23
 62/6
Conference [1]   74/9
confirm [2]   22/10 28/5
confirmed [3]   25/5 25/6 35/3
confirms [2]   26/9 29/24
conformance [1]   74/8
confused [1]   63/25
confusing [1]   39/14
Congress [1]   31/3
congressional [2]   55/5 56/7
congressman [2]   38/16 64/9
congresswoman [2]   23/2 23/3
connect [2]   26/16 39/13
conscientious [2]   43/4 65/6
consider [23]   10/9 10/13
 10/16 10/19 11/12 12/12 15/4
 17/8 21/3 22/6 22/7 22/12
 23/8 23/16 26/7 27/14 28/2
 37/21 49/8 53/8 58/15 66/5
 71/25
consideration [6]   9/24 10/1
 10/5 47/3 48/2 57/10
considered [3]   53/12 53/15
 64/23
considering [2]   11/21 34/1
consist [1]   62/18
consistent [4]   12/8 40/14
 40/16 68/22
consistently [1]   62/20
consists [1]   10/10
constitution [1]   47/25
consult [3]   8/19 65/14 66/21
consulting [1]   65/22
containing [2]   16/20 30/15
contemplated [1]   62/8
contend [1]   48/12
context [14]   15/6 22/7 22/12
 23/5 23/13 23/20 24/6 26/8
 26/9 34/1 37/17 47/9 53/24
 54/22
continue [1]   66/23
contradicted [2]   12/3 36/15
contradiction [2]   43/2 48/13
control [1]   13/10
controls [1]   11/2
conversation [2]   23/13 56/18
conversations [1]   15/7
convict [1]   48/2
convicted [1]   27/24
convince [1]   45/3
convinced [3]   9/19 10/2 10/6
convinces [1]   44/10
coordinator [1]   28/17
copy [2]   4/11 8/18
Corporation [1]   56/13
correct [5]   21/1 43/3 43/11
 69/19 74/5
could [10]   6/17 7/2 24/2
 24/23 38/9 40/21 51/21 53/5
 56/21 57/5
couldn't [1]   57/6
counsel [11]   2/1 4/9 41/17
 46/10 47/11 52/23 68/7 70/14
 71/9 72/6 73/7
count [50]
country [4]   27/10 54/2 55/23
 56/3
counts [53]
couple [2]   4/15 46/2
course [11]   31/15 42/12
 45/15 45/16 46/1 46/2 46/6
 46/19 46/23 52/2 65/5
court [17]   1/1 1/20 4/9 7/11
 11/4 24/15 42/2 42/25 43/13

44/5 53/2 64/17 66/5 66/20
72/2
court's [4]   7/16 7/20 7/21
 60/18
courtroom [4]   60/14 60/15
 66/13 68/21
CR [1]   1/8
crazy [1]   59/8
credibility [1]   63/4
credible [1]   63/1
cried [1]   34/24
crime [8]   13/8 18/4 27/24
 42/21 56/3 56/4 58/12 66/4
crimes [3]   45/14 60/24 61/6
criminal [2]   44/7 44/8
cross [1]   62/5
cross-examination [1]   62/5
CRR [1]   74/12
Cruz [1]   72/9
cry [1]   19/19
crying [1]   36/12
CSR [2]   1/20 74/12
cunt [9]   26/22 27/3 35/21
 36/19 37/4 38/17 39/5 40/5
 40/25
cunts [1]   35/7
current [3]   54/18 54/24
 55/12
cuts [1]   7/1

**D**

D-W-A-Y-N-E [1]   67/10
DAHLQUIST [3]   2/5 3/13 3/15
danger [1]   24/1
Daryl [2]   38/24 39/2
date [4]   13/16 13/19 66/11
 74/10
dated [1]   72/16
dates [2]   13/14 13/16
DAVID [2]   2/10 2/10
day [5]   1/14 26/12 34/1 34/3
 71/14
days [1]   36/1
DC [3]   31/8 31/14 31/17
deal [1]   32/13
dealing [1]   56/20
death [5]   28/7 28/16 38/2
 44/15 46/8
decide [11]   9/1 11/5 11/16
 11/19 12/13 12/15 13/9 53/14
 63/1 64/21 66/5
deciding [6]   10/9 10/16
 11/18 17/10 49/12 66/6
decision [4]   41/10 43/4 65/2
 65/6
deeply [1]   39/18
defect [1]   61/12
defective [1]   50/24
defendant [143]
defendant's [16]   16/5 16/7
 17/9 22/1 22/8 23/8 24/20
 26/17 38/8 47/4 48/10 48/23
 49/11 49/22 60/1 62/4
defense [3]   53/4 60/16 62/23
define [3]   5/23 5/23 7/22
defined [4]   5/24 17/16 36/25
 48/1
definition [8]   59/14 59/25
 70/17 70/17 70/20 70/21 71/5
 71/5
degrading [1]   64/2
degrees [1]   35/18
deliberate [3]   42/20 65/15
 67/15
deliberately [3]   6/2 12/16
 15/13
deliberating [1]   50/6
deliberations [8]   8/19 64/15
 64/16 65/17 66/11 66/15

**D**

**deliberations... [2]**  66/23
70/10
**demand [3]**  44/9 44/18 45/2
**demean [2]**  40/19 40/20
**democracy [1]**  72/25
**denied [1]**  62/16
**denies [1]**  48/14
**deny [1]**  57/5
**depart [1]**  68/1
**department [2]**  2/4 73/10
**depend [1]**  12/22
**describe [1]**  36/22
**described [7]**  24/15 28/6
29/13 35/6 38/7 38/14 40/12
**describing [1]**  45/12
**desert [2]**  50/11 55/14
**deserves [1]**  12/25
**destroyed [1]**  45/1
**detail [1]**  25/7
**detail-oriented [1]**  25/7
**details [2]**  38/18 56/16
**deter [1]**  15/25
**determination [1]**  49/4
**determine [7]**  13/3 15/3
17/14 21/25 49/3 49/6 59/15
**determining [2]**  46/17 52/12
**dial [1]**  50/25
**dialed [1]**  31/6
**dialing [2]**  33/4 33/6
**dials [1]**  33/5
**did [26]**  5/23 6/6 6/18 6/23
6/24 7/23 11/10 17/25 19/15
20/2 24/3 26/18 29/18 31/21
31/21 32/25 33/11 34/10
34/18 35/17 54/25 55/8 57/5
59/2 62/9 69/17
**didn't [12]**  24/5 24/5 26/21
28/11 29/17 49/15 53/25 54/6
55/7 59/3 60/8 63/8
**die [4]**  37/18 37/21 38/4
47/22
**differ [1]**  10/25
**difference [3]**  30/8 55/21
62/21
**differences [1]**  12/13
**different [11]**  12/9 12/9
20/9 25/18 25/19 27/7 30/8
36/1 37/19 51/11 57/19
**differently [2]**  12/12 39/16
**differs [2]**  12/14 46/9
**difficult [1]**  67/22
**direct [10]**  11/7 11/8 11/8
11/13 11/15 23/22 24/16
24/17 25/4 25/6
**directly [2]**  49/17 49/17
**disability [2]**  57/5 57/6
**discharge [1]**  67/17
**discharged [1]**  67/4
**disclose [4]**  18/1 33/1 33/11
59/2
**disclosed [2]**  16/9 49/24
**discuss [1]**  64/17
**discussed [3]**  4/12 6/7 64/23
**discussing [2]**  20/11 27/13
**discussion [1]**  65/1
**dislikes [2]**  8/24 65/10
**disregard [3]**  6/3 11/3 15/14
**disrespectful [2]**  36/20
36/23
**distinction [2]**  11/14 24/17
**distinguished [2]**  14/18
21/22
**district [4]**  1/1 1/2 1/4
22/19
**DIVISION [1]**  1/2
**do [27]**  9/2 9/3 12/13 26/3
43/13 44/12 50/15 51/8 52/20

55/25 58/4 58/5 58/7 59/3
60/11 60/24 61/14 62/19
64/22 64/25 65/1 65/6 65/7
65/10 65/16 67/18 67/24
**doctor [1]**  56/23
**doctrine [1]**  56/25
**does [11]**  6/9 6/12 9/13 9/14
12/22 17/7 27/23 42/24 43/4
71/5 72/19
**doesn't [13]**  6/10 26/13
27/23 36/14 44/17 50/22
51/22 52/7 52/9 57/14 58/4
59/6 60/24
**doing [8]**  6/20 32/9 47/19
47/22 56/2 57/8 58/13 59/18
**don't [23]**  5/7 6/16 6/25
27/10 38/2 41/9 46/10 50/17
50/18 51/9 52/25 53/11 55/24
56/1 58/11 58/11 59/19 63/17
64/10 67/15 69/2 69/3 69/7
**done [7]**  9/4 17/6 27/20 54/5
56/5 63/24 64/6
**doubt [37]**  5/20 9/12 9/17
9/18 9/21 9/21 9/21 10/3
10/6 13/15 14/1 14/15 15/16
16/18 17/24 20/21 24/8 24/10
24/13 24/15 25/11 28/20
28/22 28/25 29/5 29/5 30/5
31/19 32/11 33/24 37/6 43/16
44/2 44/10 44/20 45/3 66/7
**down [6]**  19/12 27/20 35/5
35/6 50/8 51/3
**drawn [2]**  16/10 50/1
**due [3]**  50/7 56/2 61/1
**dumb [3]**  39/6 40/10 40/13
**during [10]**  8/19 18/1 31/13
31/16 37/16 55/20 59/3 65/16
65/25 66/14
**duties [5]**  14/9 14/12 15/19
15/21 65/9
**duty [8]**  8/16 8/20 10/4 10/7
42/1 42/4 54/7 65/14
**Dwayne [1]**  67/10

**E**

**e-mail [1]**  65/23
**e-mails [3]**  68/9 68/19 69/24
**each [21]**  4/11 4/22 4/23
4/23 13/9 13/9 13/25 16/17
17/23 20/7 20/8 20/9 27/10
41/2 41/3 41/9 45/14 64/21
65/5 65/24 72/17
**easier [1]**  58/20
**education [1]**  35/17
**effect [4]**  6/19 40/3 47/21
65/8
**effective [1]**  56/1
**efficient [1]**  73/2
**efficiently [1]**  42/10
**effort [1]**  22/18
**efforts [1]**  8/11
**eight [3]**  12/5 20/6 20/10
**either [5]**  6/1 11/13 11/15
15/13 47/16
**elect [1]**  64/15
**electronic [1]**  65/23
**element [35]**  5/19 7/16 9/16
14/13 15/16 18/3 21/11 24/7
24/9 24/12 24/14 25/10 28/19
28/21 28/24 29/1 30/4 30/19
31/18 31/20 32/10 32/16
32/17 32/18 32/23 33/16
33/23 46/4 48/18 52/4 52/14
52/18 58/15 58/22 59/1
**elements [15]**  14/1 16/18
20/15 25/20 30/12 32/14
33/20 43/19 43/25 45/13 46/1
46/3 46/12 58/20 71/1
**elephant [6]**  60/20 60/21

60/22 60/23 61/1 61/7
60/25 61/1 61/4 61/14 61/22
70/23
**emphasized [1]**  43/13
**emphasizing [1]**  69/4
**employee [11]**  13/22 15/18
15/20 21/6 21/9 24/10 24/11
25/23 28/22 46/11 53/1
**employees [7]**  14/6 19/7 30/9
38/20 40/23 52/17 62/1
**empower [1]**  40/18
**end [4]**  27/7 40/21 59/22
62/22
**ended [1]**  55/15
**endorse [1]**  56/1
**engaged [2]**  14/9 15/19
**enough [2]**  34/19 44/9
**entire [3]**  37/12 37/13 37/15
**entitled [4]**  38/22 42/22
43/10 74/7
**envision [1]**  45/13
**escalation [1]**  23/4
**essentially [4]**  4/11 46/11
52/24 62/20
**established [4]**  16/6 30/4
49/12 49/21
**et [1]**  65/23
**evaluate [4]**  21/25 34/7
62/24 62/25
**evaluating [6]**  21/18 21/23
23/9 26/6 28/1 63/3
**even [10]**  26/24 50/18 50/21
51/9 51/23 52/8 53/11 53/25
55/2 57/6
**evening [1]**  4/12
**event [2]**  12/12 24/2
**eventually [2]**  54/7 56/19
**ever [3]**  42/21 56/7 66/17
**every [2]**  9/16 40/21
**everybody [2]**  52/8 54/11
**everything [1]**  11/20
**EVID [1]**  3/8
**evidence [69]**
**evil [1]**  59/4
**evoke [1]**  59/21
**evolved [2]**  55/9 55/9
**ex [1]**  45/11
**ex-marine [1]**  45/11
**exact [1]**  27/5
**exactly [2]**  23/10 25/3
**exaggeration [3]**  14/19 21/22
23/14
**examination [1]**  62/5
**example [4]**  43/5 47/18 50/24
51/12
**except [2]**  52/25 66/18
**exceptional [1]**  71/16
**excluded [1]**  11/2
**EXHIBIT [5]**  3/8 31/10 50/6
70/4 70/7
**exhibits [4]**  10/11 10/14
31/10 69/1
**expect [2]**  32/5 62/7
**experience [2]**  37/25 73/3
**explain [3]**  20/8 32/14 35/17
**explained [2]**  33/21 35/12
**explanation [2]**  34/10 35/24
**explanations [1]**  63/11
**explanatory [1]**  44/5
**expletive [1]**  27/7
**expletives [1]**  62/21
**exposed [1]**  24/1
**expressing [7]**  14/16 21/20
22/11 23/9 23/11 26/5 47/14
**expression [9]**  14/23 21/24
28/13 30/21 47/23 48/6 48/20
53/10 53/15
**extreme [2]**  6/2 15/14
**extremely [1]**  43/9

**F**

**fabricate [2]** 27/11 63/6
**face [3]** 22/22 55/17 60/21
**faceless [1]** 51/9
**fact [14]** 11/8 11/12 11/14
 12/22 16/5 24/18 33/3 33/12
 37/11 49/11 52/16 52/17
 63/14 64/3
**factors [2]** 12/6 22/10
**facts [9]** 8/20 8/21 10/10
 10/11 10/16 10/25 11/11
 11/18 42/13
**fairly [1]** 65/9
**fake [1]** 19/14
**familiar [1]** 22/20
**far [1]** 54/20
**fear [5]** 15/24 25/1 28/6
 29/13 65/11
**fearful [1]** 15/24
**FEBRUARY [3]** 1/16 4/1 72/16
**February 12 [1]** 72/16
**federal [10]** 13/21 28/22
 30/9 40/23 42/4 42/20 43/3
 43/7 43/13 62/1
**feel [7]** 28/9 36/9 37/24
 43/1 43/3 43/11 59/6
**Feinswog [3]** 37/9 37/9 64/8
**fellow [3]** 64/18 64/24 66/3
**felt [7]** 23/19 28/6 28/8
 35/23 36/8 48/9 48/11
**female [1]** 37/3
**Feres [1]** 56/25
**festered [2]** 55/11 55/12
**festering [1]** 61/3
**few [2]** 4/13 42/3
**fighting [1]** 61/4
**figure [1]** 50/4
**final [1]** 19/3
**finalized [1]** 4/10
**finally [5]** 20/13 33/14
 39/19 57/21 63/21
**financing [1]** 34/9
**find [23]** 6/17 8/20 10/4
 10/7 11/12 18/6 18/10 18/15
 18/18 18/21 18/22 22/19 41/3
 45/7 45/24 46/1 46/4 52/5
 52/21 53/7 60/5 60/11 61/19
**firmly [1]** 9/19
**first [58]**
**fits [2]** 6/4 20/9
**five [1]** 12/2
**fixed [1]** 56/15
**focus [3]** 32/16 43/24 46/24
**focused [2]** 4/17 46/23
**follow [2]** 8/22 9/6
**following [15]** 4/6 6/14 7/8
 8/8 10/15 13/25 16/18 17/24
 41/15 61/13 68/5 69/15 70/12
 72/3 73/5
**follows [1]** 70/19
**foregoing [1]** 74/5
**foreperson [4]** 64/16 66/10
 68/12 72/15
**forget [1]** 12/10
**forgot [2]** 47/2 47/3
**form [5]** 4/10 5/13 5/16 66/8
 66/10
**format [1]** 74/8
**formed [1]** 51/21
**forward [3]** 44/14 67/5 67/6
**found [10]** 13/24 16/16 17/22
 19/21 19/21 20/21 43/1 46/2
 55/10 55/25
**four [3]** 12/1 45/21 53/18
**fourth [1]** 20/13
**Frances [2]** 19/19 34/23
**frighten [1]** 15/25
**frightened [1]** 29/16

**front [3]** 24/1 60/15 60/17
**frustrated [4]** 47/6 56/7
 56/20 57/9 57/17 57/17
**frustration [3]** 47/24 55/10
 57/7
**frustrations [1]** 47/15
**fuck [7]** 22/24 23/3 23/7
 24/25 26/24 39/5 41/1
**fucking [6]** 26/14 26/18
 35/19 36/10 37/5 38/3
**fully [1]** 64/23
**further [1]** 42/3
**futility [1]** 55/10
**future [3]** 14/18 21/21 47/17

**G**

**garage [3]** 50/11 52/6 55/13
**garbage [2]** 37/14 39/15
**gave [4]** 42/2 46/22 46/25
 54/6
**gender [1]** 65/13
**generally [1]** 71/15
**gentleman [1]** 68/14
**gentlemen [5]** 36/21 40/17
 41/21 60/13 61/16
**get [34]** 4/14 7/5 8/7 8/12
 26/19 36/6 39/12 42/10 43/6
 45/19 46/1 46/4 46/15 52/1
 52/13 54/18 56/4 56/10 56/11
 56/15 57/5 57/6 57/19 57/21
 57/24 58/5 58/6 58/14 58/14
 59/18 59/20 60/10 63/22
 63/24
**gets [2]** 56/6 57/16
**getting [5]** 23/4 43/6 44/2
 50/25 51/6
**giant [1]** 60/20
**give [18]** 5/14 8/22 8/23
 11/17 12/9 18/25 29/17 34/21
 41/12 42/3 42/8 51/5 54/13
 56/16 57/14 59/6 64/10 71/7
**given [9]** 4/11 11/15 19/3
 23/20 23/20 24/5 43/19 43/22
 72/6
**gives [1]** 59/25
**giving [2]** 19/2 55/6
**glad [1]** 6/20
**gloated [1]** 19/16
**glossed [1]** 47/7
**go [24]** 6/6 20/7 26/24 31/9
 32/15 37/18 37/21 38/4 42/9
 45/6 45/12 47/9 47/22 48/23
 51/7 53/8 54/7 54/21 56/15
 56/17 58/20 59/5 67/25 68/1
**go-fuck-yourself [1]** 26/24
**goes [4]** 31/20 48/17 49/6
 49/9
**going [47]**
**gone [3]** 45/1 57/12 61/18
**good [7]** 8/10 41/21 45/11
 45/11 47/22 50/3 56/12
**got [9]** 29/11 34/8 45/19
 46/3 55/14 56/19 60/22 61/2
 62/16
**government [40]**
**government's [1]** 5/10
**graduated [1]** 35/18
**guess [1]** 8/3
**guilt [2]** 9/20 67/3
**guilty [42]**

**H**

**had [46]**
**half [1]** 7/25
**halfway [2]** 46/2 70/5
**hand [4]** 10/4 12/18 30/3
 72/8
**handle [1]** 60/22

**handwritten [1]** 44/22
**hang [2]** 57/17 57/17
**hangs [2]** 57/17 58/10
**happened [1]** 12/10
**harass [20]** 18/2 18/5 18/7
 18/10 18/24 33/15 38/22
 40/19 40/20 53/21 57/20
 58/14 59/12 59/14 59/19
 59/23 59/24 60/4 62/2 64/12
**harassment [5]** 17/20 46/15
 53/17 58/16 60/1
**harm [1]** 18/19
**Harms [1]** 30/1
**Harms' [1]** 29/24
**harsh [6]** 18/16 37/1 37/2
 38/10 39/20 40/2
**has [36]** 4/9 6/11 9/10 9/15
 12/15 13/1 20/16 20/20 33/6
 37/6 37/14 37/25 41/11 44/8
 44/8 50/8 50/9 53/9 53/19
 54/16 54/17 55/14 55/15
 55/15 55/25 56/25 57/12
 57/24 61/2 61/18 63/12 63/23
 64/6 66/6 66/8 72/6
**hated [1]** 39/16
**hateful [1]** 38/8
**have [114]**
**having [5]** 32/8 38/9 38/10
 56/22 65/6
**he [294]**
**health [2]** 54/19 54/19
**hear [12]** 8/15 11/23 19/4
 38/9 38/9 39/14 39/15 41/10
 41/18 68/11 68/17 68/21
**heard [23]** 5/3 5/3 8/15 11/4
 11/10 14/22 15/8 22/9 23/17
 27/19 28/8 28/10 29/22 36/5
 39/23 40/3 40/4 40/5 42/1
 48/5 48/19 49/16 53/22
**hearing [2]** 39/23 40/11
**held [10]** 4/6 7/8 8/8 41/15
 68/5 69/15 70/12 72/3 73/5
 74/6
**Hello [1]** 51/3
**help [27]** 7/2 22/18 26/16
 37/22 38/4 38/5 38/18 39/9
 39/12 39/13 44/24 51/3 51/5
 54/11 55/6 55/17 56/11 56/13
 56/21 57/15 57/22 58/6 58/14
 58/14 59/18 59/20 60/10
**her [66]**
**here [19]** 5/19 6/4 8/13 13/3
 18/6 48/21 48/23 50/3 50/7
 50/11 50/15 54/5 56/13 57/8
 59/9 61/24 61/25 64/17 66/19
**hereby [1]** 74/4
**Hernandez [1]** 67/14
**herself [3]** 23/23 35/11
 35/16
**hesitate [1]** 65/17
**hid [1]** 19/14
**high [4]** 44/9 45/19 45/23
 52/2
**higher [3]** 44/8 44/19 46/3
**highlights [1]** 34/4
**hillbilly [1]** 40/13
**him [46]**
**himself [3]** 38/14 38/16
 38/17
**hinder [2]** 15/23 16/2
**his [95]**
**history [4]** 26/11 28/4 37/10
 39/3
**Hold [1]** 7/12
**holding [1]** 30/2
**home [2]** 43/6 50/13
**homeless [2]** 39/8 39/11
**honest [1]** 65/7
**Honor [23]** 5/7 5/11 6/22 7/4

**H**

**Honor... [19]** 7/7 7/10 21/1
41/7 41/20 61/8 61/15 61/23
68/14 68/23 69/5 69/9 69/11
69/14 69/22 70/4 70/7 71/20
72/21
**HONORABLE [1]** 1/3
**hope [2]** 73/3 73/3
**hospital [4]** 22/17 22/21
54/20 54/21
**hostile [1]** 35/22
**house [2]** 24/11 35/4
**how [29]** 11/16 12/24 12/24
20/8 23/18 28/8 28/9 34/9
36/10 36/22 37/22 38/4 38/5
38/20 39/12 42/9 42/13 45/9
45/12 46/24 47/1 50/16 50/19
50/20 54/16 62/6 62/8 62/23
67/1
**However [1]** 12/15
**human [3]** 5/25 6/3 15/12
**humans [1]** 35/25
**hung [5]** 19/25 19/25 22/25
26/22 34/18
**hurdles [1]** 51/25
**hurt [2]** 5/9 7/2

**I**

**I'm [5]** 36/8 36/11 37/24
37/24 69/20
**I.D [1]** 3/8
**identical [2]** 27/4 45/17
**identifiable [2]** 6/12 6/15
**identified [5]** 14/3 14/4
35/11 39/2 39/5
**identity [7]** 18/1 33/1 33/11
33/12 59/3 63/8 63/17
**idle [3]** 14/18 21/22 28/9
**ignorance [1]** 17/8
**ignore [3]** 9/7 12/21 21/2
**ignored [1]** 55/1
**ignores [1]** 63/14
**Ignoring [1]** 26/15
**illegal [1]** 23/1
**imagine [1]** 57/7
**immediately [3]** 14/17 48/16
54/13
**impact [4]** 28/15 32/8 33/6
40/2
**impacted [1]** 62/9
**impartial [4]** 9/23 10/1 10/5
42/19
**impartially [1]** 65/9
**impede [6]** 14/8 15/17 15/22
21/7 25/24 29/2
**implying [1]** 61/12
**importance [1]** 38/18
**important [16]** 9/7 12/17
12/23 21/10 34/4 42/16 43/8
43/9 47/2 47/5 56/14 56/17
58/15 65/4 67/20 71/17
**impressions [1]** 35/6
**improper [1]** 61/9
**improved [1]** 54/17
**inappropriate [1]** 37/2
**inappropriately [3]** 18/16
37/1 40/1
**incentive [1]** 27/11
**incessantly [1]** 58/6
**inclination [1]** 70/19
**inclinations [1]** 68/17
**include [1]** 6/15
**includes [1]** 17/2
**including [3]** 15/6 67/1 67/2
**increased [1]** 19/10
**indeed [1]** 28/5
**indicated [3]** 46/10 47/11
52/24

**indictment [10]** 9/9 13/5
16/12 16/13 16/16 16/18
16/12 17/14 17/19
**indirect [1]** 11/10
**individual [3]** 42/22 43/10
63/20
**inference [2]** 29/6 29/22
**inferences [3]** 16/10 49/19
49/25
**inflict [3]** 14/17 18/19
21/20
**influence [1]** 65/11
**influenced [3]** 8/24 65/12
66/3
**information [5]** 26/19 26/20
26/21 40/10 51/6
**initially [1]** 22/14 35/10
**initiated [1]** 26/12
**injure [2]** 16/20 30/15
**injured [1]** 61/25
**injury [4]** 14/17 21/21 54/4
55/1
**innocence [1]** 9/15
**innocent [1]** 9/11
**input [1]** 5/1
**insanity [1]** 61/12
**insight [1]** 42/4
**inspire [2]** 15/24 40/18
**instance [1]** 25/8
**instruct [2]** 8/16 68/24
**instructed [8]** 5/5 11/3
21/12 22/6 27/12 30/24 53/2
63/12
**instructing [1]** 29/4
**instruction [27]** 5/14 5/17
5/17 5/24 6/3 6/4 6/5 6/8
7/11 7/15 7/15 7/17 7/20
7/21 8/4 29/21 44/5 44/6
48/10 48/18 48/21 49/6 49/10
59/25 63/13 68/25 69/4
**instructions [15]** 4/10 8/18
9/3 9/6 17/17 18/25 19/2
42/2 42/14 43/23 51/24 63/3
70/20 71/2 71/4
**instructs [1]** 42/25
**insult [1]** 26/15
**intend [7]** 18/4 19/15 33/14
49/16 50/16 51/8 51/22
**intended [26]** 15/9 17/1
17/15 18/2 18/7 18/9 18/14
18/18 18/19 21/7 21/8 21/13
22/1 24/23 25/24 25/25 26/2
26/16 26/16 29/2 29/3 31/24
59/11 59/11 59/24 60/4
**intending [6]** 14/25 24/25
25/1 25/1 32/3 49/1
**intent [51]**
**intention [2]** 14/17 21/20
**intentionally [3]** 6/2 15/13
59/18
**intents [1]** 33/16
**interest [1]** 12/1
**interested [1]** 57/1
**interfere [6]** 14/8 15/18
15/25 21/7 25/25 29/2
**intermeddle [1]** 16/1
**intern [3]** 26/13 35/10 57/19
**internal [1]** 33/9
**interns [3]** 23/24 23/25
56/20
**interpose [1]** 16/2
**interstate [11]** 16/13 16/19
17/1 17/6 17/25 30/11 30/14
32/18 32/21 58/23 58/25
**intervene [1]** 16/2
**intimidate [8]** 14/8 15/18
15/23 21/7 25/25 29/2 29/9
64/12
**intimidated [1]** 25/4

**intimidating [1]** 63/16
**intimidation [3]** 14/9 29/19
29/23
**invoke [1]** 40/12
**involve [1]** 58/2
**involved [2]** 31/3 34/9
**involves [1]** 37/7
**is [384]**
**isn't [4]** 48/10 60/23 71/13
71/18
**issue [2]** 61/14 62/3
**issuing [2]** 16/22 30/17
**it [164]**
**its [1]** 66/7

**J**

**James [1]** 67/14
**job [5]** 19/22 42/9 45/12
47/20 47/22
**jobs [1]** 44/4
**Joe [1]** 35/9
**John [1]** 51/17
**joke [1]** 23/14
**joking [3]** 14/19 21/23 23/12
**judge [12]** 1/4 21/11 21/19
22/6 24/15 25/21 27/12 29/4
30/24 36/25 44/5 63/12
**judge's [1]** 63/3
**judges [1]** 42/4
**judging [1]** 57/8
**Judicial [1]** 74/9
**jump [3]** 44/14 46/5 46/17
**juror [6]** 42/10 43/2 43/4
44/18 68/13 69/21
**juror's [1]** 42/1
**jurors [16]** 42/5 42/16 43/13
44/4 44/9 45/2 45/24 50/3
64/18 64/24 64/25 65/2 65/14
66/3 68/1 72/18
**jury [38]**
**just [30]** 4/21 5/3 5/5 5/22
7/13 8/12 12/14 13/2 14/14
17/14 19/17 21/2 34/17 34/22
34/23 34/24 36/9 37/3 38/17
40/11 42/3 47/5 47/14 50/23
54/5 58/13 59/7 61/5 63/22
70/24
**JUSTICE [1]** 2/4
**justified [1]** 36/24

**K**

**Karajah [5]** 20/19 20/23
22/15 22/17 27/5
**Karajh [1]** 71/12
**KATIE [2]** 1/20 74/12
**keep [2]** 42/17 55/20
**keeping [1]** 34/25
**kept [3]** 35/4 55/2 55/3
**kill [35]** 4/21 4/24 6/1
15/13 23/3 23/7 23/10 23/11
24/24 25/10 27/2 27/6 27/16
27/17 27/18 27/19 27/20
27/25 28/13 29/8 31/22 33/22
40/22 40/24 40/25 41/1 47/16
51/7 51/17 51/22 53/10 53/15
62/14 62/17 63/18
**killing [2]** 5/25 15/11
**kind [7]** 44/9 44/19 46/21
50/9 56/9 57/25 59/21
**kinds [3]** 45/5 49/4 56/4
**knew [16]** 17/4 19/23 19/24
19/25 22/2 28/9 28/12 29/23
34/17 39/16 39/17 39/22 62/5
62/6 62/11 62/15
**know [38]**
**knowing [3]** 30/19 32/2 37/19
**knowingly [6]** 16/19 17/6
17/11 30/13 30/23 30/24

## K

**knowledge [6]** 15/1 16/23 30/17 49/2 54/15 57/25
**known [1]** 43/15
**knows [3]** 32/7 32/7 50/21
**Kylie [1]** 35/9

## L

**lack [1]** 9/24
**ladies [5]** 36/21 40/17 41/21 60/13 61/16
**language [21]** 15/7 18/16 22/8 23/8 23/20 26/8 27/4 27/4 27/6 32/7 34/14 37/1 37/17 39/21 40/23 51/2 55/19 57/16 58/11 59/19 60/9
**last [8]** 4/12 19/12 34/20 38/23 45/21 53/18 54/17 63/9
**lastly [1]** 42/12
**later [2]** 43/22 55/5
**launched [1]** 22/16
**law [24]** 2/10 8/17 8/22 8/22 11/14 20/5 24/16 28/24 32/13 33/19 42/7 42/8 42/14 42/25 43/14 43/14 43/16 43/18 44/3 45/6 46/20 53/17 63/11 66/4
**laws [3]** 25/18 43/19 43/23
**lawyer's [1]** 10/19
**lawyers [9]** 8/16 10/12 10/18 10/18 10/21 11/1 19/1 19/3 66/22
**lawyers' [1]** 10/20
**Leah [1]** 25/16
**learned [2]** 29/14 39/4
**least [1]** 44/22
**leave [2]** 54/8 61/15
**leaves [1]** 9/19
**lecturn [1]** 4/16
**legal [1]** 56/24
**less [1]** 23/15
**let's [9]** 44/13 44/22 45/9 46/20 51/1 51/13 53/22 55/17 60/21
**Levin's [1]** 38/16
**liaison [3]** 57/23 59/7 60/11
**lie [5]** 27/11 27/15 27/22 62/18 63/5
**life [4]** 6/3 15/14 25/9 50/9
**light [2]** 5/4 12/5
**like [25]** 6/21 16/3 16/3 35/23 36/10 37/14 40/4 41/5 41/22 41/24 41/25 42/12 45/15 50/9 53/16 56/8 56/15 58/4 58/11 58/11 58/18 59/19 61/2 68/12 70/16
**liked [1]** 57/4
**likes [3]** 8/24 58/5 65/10
**Linda [2]** 22/17 22/21
**line [4]** 7/16 7/22 7/25 7/25
**line 13 [1]** 7/25
**line 15 [1]** 7/25
**line 6 [1]** 7/22
**lines [1]** 7/16
**list [4]** 34/25 35/4 38/15 38/15
**listen [1]** 38/10
**listened [2]** 37/11 64/24
**listening [2]** 38/13 67/16
**literally [2]** 24/3 24/4
**little [15]** 26/22 27/3 40/25 43/22 44/3 44/13 46/14 46/14 50/11 52/6 53/16 53/23 55/13 55/14 58/20
**live [1]** 27/9
**living [2]** 55/13 61/18
**logical [2]** 16/9 49/25
**Loma [2]** 22/17 22/21
**long [1]** 30/10
**longer [1]** 5/14
**look [5]** 9/5 28/20 31/7 42/3
**looking [4]** 34/11 45/13 60/14 60/19
**looks [1]** 68/12
**LOS [5]** 1/15 1/22 2/12 4/1 72/16
**loss [1]** 18/19
**lot [5]** 44/1 45/20 46/25 48/1 54/16
**lousy [1]** 60/9
**lower [4]** 46/14 46/14 46/16 58/17
**lowly [1]** 26/13

## M

**MacDonald [3]** 69/20 72/8 72/15
**machine [1]** 51/4
**made [32]** 14/25 15/5 17/2 17/25 19/18 20/18 22/8 22/18 22/22 23/6 25/15 26/11 28/9 30/24 30/25 31/1 32/18 38/14 38/15 38/17 44/15 44/23 48/4 48/18 48/25 49/9 53/24 55/2 56/24 58/22 58/25 65/6
**mail [1]** 65/23
**mails [3]** 68/9 68/19 69/24
**main [1]** 30/8
**majority [1]** 20/11
**make [13]** 7/13 12/10 15/23 31/21 36/12 41/13 42/3 44/24 49/4 49/18 58/5 61/21 63/11
**makes [4]** 11/14 23/17 24/16 56/18
**making [11]** 21/16 22/5 45/5 50/5 50/14 52/7 52/19 53/20 54/23 59/16 59/17
**malice [2]** 6/1 15/12
**malpractice [2]** 57/1 57/2
**man [3]** 24/5 39/10 54/2
**manifestation [1]** 16/7
**manifestations [1]** 49/23
**manner [4]** 11/25 14/19 21/23 54/19
**many [1]** 33/12
**marine [4]** 45/11 45/14 45/16 52/1
**Marines [2]** 54/2 54/8
**matter [4]** 26/14 26/18 42/15 74/7
**mature [1]** 35/24
**maximize [1]** 40/1
**may [30]** 8/18 9/4 9/23 10/13 10/16 10/19 11/4 11/7 11/20 11/22 12/7 12/11 12/12 12/17 12/20 16/5 16/10 17/8 42/8 49/12 49/21 49/25 51/5 66/5 66/15 66/22 66/23 70/25 73/8 73/9
**May 4th [1]** 73/9
**May 6th [1]** 73/8
**maybe [5]** 23/1 40/6 54/9 55/11 57/18
**me [9]** 37/14 38/2 51/5 52/20 56/16 60/10 66/15 66/18 67/1
**mean [8]** 7/1 23/19 24/4 42/24 69/3 71/12 71/14 71/15
**meaning [2]** 6/1 15/12
**means [8]** 8/25 15/22 15/23 16/1 16/3 30/24 42/24 65/23
**medical [1]** 54/22
**member [2]** 64/15 66/17
**members [5]** 8/10 8/14 31/3 69/17 72/23
**memory [4]** 11/1 11/25 66/1 66/2
**menacing [1]** 64/1
**mental [15]** 47/4 47/5 51/22

**52/4 53/13 57/10 57/10 57/12 58/8 60/25 61/1 61/1 61/12 62/3
**mentioned [5]** 7/14 25/22 29/6 30/6 32/20
**mercilessly [1]** 19/7
**message [2]** 64/9 64/10
**met [4]** 46/1 46/3 46/4 46/18
**might [1]** 43/2
**mind [17]** 39/9 42/17 43/1 48/22 48/23 48/24 48/25 50/14 50/16 50/20 52/6 52/18 53/5 55/20 59/8 59/12 61/10
**minor [1]** 4/14
**minute [3]** 8/12 34/24 36/7
**minutes [1]** 41/9
**miserable [3]** 26/22 27/3 40/25
**miss [1]** 43/7
**mission [1]** 29/10
**mistake [3]** 17/8 30/25 31/1
**mistakes [1]** 12/10
**mock [1]** 36/14
**mocked [4]** 36/4 36/7 36/11 40/15
**mocking [3]** 35/22 36/3 36/13
**modification [1]** 5/13
**modifications [2]** 4/13 4/15
**modify [1]** 5/16
**Montgomery [3]** 68/14 68/16 69/19
**month [4]** 37/10 37/12 37/13 37/15
**more [21]** 6/21 11/11 20/14 22/23 23/4 23/4 23/5 23/5 37/2 42/10 51/6 51/6 51/6 54/19 56/16 57/16 57/17 63/16 63/19 66/16 71/17
**morning [4]** 8/10 41/21 41/25 58/6
**most [8]** 6/4 40/22 42/16 56/14 56/16 58/15 59/10 60/3
**motion [1]** 4/17
**motive [3]** 27/11 27/15 63/5
**move [2]** 20/12 52/21
**moving [3]** 25/12 35/8 37/7
**Mr [4]** 3/13 3/14 3/15 69/20
**Mr. [38]**
**Mr. Brady [5]** 39/9 39/23 40/4 40/9 40/12
**Mr. Cruz [1]** 72/9
**Mr. MacDonald [2]** 72/8 72/15
**Mr. Montgomery [3]** 68/14 68/16 69/19
**Mr. Perkins' [1]** 25/5
**Mr. Reed [2]** 4/15 41/19
**Mr. Stahlnecker [21]** 5/8 41/23 44/24 45/10 48/14 49/15 50/8 51/21 52/5 53/5 53/20 53/22 54/1 54/23 55/12 55/25 56/19 58/2 59/16 60/23 61/17
**Mr. Stahlnecker's [3]** 47/10 50/4 50/20
**MRI [2]** 54/3 57/3
**Ms [1]** 30/1
**Ms. [27]** 19/16 20/18 20/23 22/15 22/17 23/17 24/10 25/3 25/16 26/10 26/16 27/5 27/7 27/18 28/3 28/22 29/12 29/15 29/24 34/2 35/11 35/24 36/17 37/9 38/7 38/15 64/8
**Ms. Car [5]** 23/17 24/10 25/3 27/7 27/18
**Ms. Feinswog [2]** 37/9 64/8
**Ms. Harms' [1]** 29/24
**Ms. Karajah [3]** 20/23 22/17 27/5
**Ms. Leah [1]** 25/16

**M**

**Ms. Raghda [2]** 20/18 22/15
**Ms. Rutherford [3]** 35/11 35/24 36/17
**Ms. Uhrig [10]** 19/16 26/10 26/16 28/3 28/22 29/12 29/15 34/2 38/7 38/15
**much [8]** 11/17 12/24 20/14 41/20 41/23 61/2 61/11 72/23
**murder [26]** 5/3 5/4 5/6 5/21 5/22 5/23 5/24 5/24 14/2 14/3 14/15 14/17 14/24 15/11 20/22 21/4 21/21 22/11 25/21 34/2 44/16 48/7 48/15 49/20 62/1 63/15
**must [26]** 5/20 8/22 8/24 8/25 9/5 13/9 13/25 14/13 14/20 14/21 14/24 15/15 16/17 17/14 17/23 18/22 18/23 43/13 43/14 47/12 47/12 48/18 48/22 48/25 64/20 64/21
**my [14]** 8/16 20/11 43/7 51/3 51/3 52/11 54/4 56/15 61/1 67/22 68/17 68/19 70/19 71/12
**myself [1]** 55/25

**N**

**name [16]** 3/3 28/12 29/18 32/5 33/2 33/3 33/3 34/20 34/22 34/25 39/8 59/6 59/7 62/7 63/9 67/8
**named [2]** 19/18 34/23
**names [6]** 19/11 19/12 19/13 19/14 35/5 51/16
**national [1]** 65/13
**nature [1]** 55/4
**near [1]** 13/16
**nearly [1]** 27/4
**necessarily [1]** 12/22
**necessary [8]** 13/14 13/17 15/8 17/4 21/12 26/1 66/14 69/2
**need [2]** 16/25 71/17
**needed [3]** 5/16 26/20 34/22
**needs [2]** 59/6 61/6
**nefarious [1]** 59/4
**negative [1]** 59/21
**neither [1]** 59/20
**neutral [1]** 42/18
**never [11]** 27/16 27/17 27/25 33/2 35/3 36/4 40/4 40/4 56/20 57/13 62/17
**next [5]** 34/1 34/3 39/22 49/10 59/24
**nice [1]** 51/2
**Ninth [1]** 6/7
**no [29]** 1/8 4/22 5/3 5/14 6/22 6/25 11/14 24/17 27/11 27/11 27/22 27/22 31/25 37/1 44/16 58/1 62/12 62/13 62/23 63/2 63/4 63/4 63/5 64/11 66/16 68/25 71/16 72/21 74/12
**No. [9]** 5/18 7/16 7/17 7/20 7/22 31/10 68/8 68/13 69/21
**No. 1 [1]** 68/8
**No. 12 [2]** 7/16 7/17
**No. 13 [4]** 5/18 7/20 7/22 31/10
**No. 7 [1]** 69/21
**No. 9 [1]** 68/13
**none [4]** 3/4 3/9 11/21 54/5
**normally [1]** 25/7
**not [139]**
**note [11]** 38/14 38/17 66/15 68/8 69/18 70/15 70/21 71/4

71/7 71/10 72/6
**noted [3]** 2/9 11/20 65/5
**nothing [8]** 20/3 20/4 23/12 23/12 24/23 38/21 39/22 65/21
**notice [2]** 27/3 58/1
**notion [1]** 54/11
**November [1]** 38/24
**November 19th [1]** 38/24
**now [18]** 8/14 25/12 42/24 44/1 44/3 44/12 45/18 47/16 48/24 50/14 51/11 52/23 54/10 55/13 59/9 59/14 70/2 70/7
**number [11]** 12/23 18/3 18/5 18/9 19/14 26/24 33/6 33/7 33/10 57/14 59/13
**numerically [1]** 67/1

**O**

**o'clock [1]** 43/7
**oath [1]** 9/2
**Objection [1]** 61/8
**objections [1]** 10/17
**objective [1]** 48/9
**obstacle [13]** 45/15 45/15 45/16 45/18 45/23 45/25 46/2 46/6 46/13 46/13 52/2 52/2 52/13
**obstacles [3]** 46/16 58/18 58/18
**obstruct [1]** 15/23
**obvious [2]** 29/3 63/14
**obviously [2]** 42/12 58/23
**occasions [1]** 67/20
**occurred [1]** 25/14
**October [2]** 35/9 37/8
**October 21 [1]** 35/9
**October 25th [1]** 37/8
**off [6]** 22/24 23/3 55/3 55/6 55/8 58/9
**offended [3]** 38/2 40/9 62/8
**offense [3]** 13/7 20/22 38/12
**offenses [6]** 13/13 13/15 13/18 43/20 43/20 43/25
**offensive [1]** 40/12
**offered [3]** 22/18 34/7 71/21
**office [21]** 2/4 23/7 24/1 24/24 25/15 27/2 27/6 28/17 29/7 31/22 33/22 35/13 35/14 36/11 38/1 38/16 40/24 40/25 41/1 62/14 63/18
**officer [1]** 59/8
**offices [2]** 2/10 55/5
**official [1]** 1/20 14/9 14/12 15/19 15/21
**officials [1]** 55/16
**often [1]** 12/10
**oh [2]** 6/5 68/16
**Okay [11]** 4/8 8/1 8/14 19/4 54/9 64/14 69/17 70/6 70/9 71/7 73/11
**old [1]** 37/3
**omissions [1]** 17/9
**once [2]** 21/21 39/1
**one [27]** 4/21 4/23 7/10 8/12 11/11 11/23 13/10 17/3 18/21 23/17 31/12 32/15 33/15 33/15 42/18 45/19 49/17 51/25 59/9 64/15 64/16 65/15 66/16 69/4 71/13 71/14 71/18
**only [19]** 4/17 6/20 10/13 13/3 19/10 19/15 21/2 22/22 28/7 32/16 39/21 46/9 57/10 62/20 64/22 65/5 65/21 66/2 66/19
**opening [3]** 10/22 54/4 55/21
**opinion [8]** 9/4 42/22 43/11

43/11 43/12 64/25 65/11
**opinions [1]** 8/25
**opportunity [3]** 11/23 41/13 71/21
**opposed [1]** 45/21
**opposite [2]** 27/9 40/21
**order [16]** 16/16 17/22 44/17 45/24 49/3 59/23
**oriented [1]** 25/7
**other [28]** 5/1 10/4 10/23 12/3 12/14 12/18 13/11 17/10 27/10 32/22 35/1 39/23 40/14 41/9 42/19 43/12 45/7 47/3 53/8 53/9 58/2 59/22 62/9 64/11 64/24 65/2 68/1 71/24
**others [4]** 7/3 9/7 12/20 62/2
**otherwise [2]** 27/20 67/1
**ought [1]** 5/5
**our [9]** 47/25 54/2 55/23 56/3 56/14 56/16 57/11 60/14 72/25
**out [25]** 5/21 6/8 7/14 7/18 7/23 8/1 8/4 8/6 9/6 15/10 15/11 17/1 21/13 21/15 22/19 24/2 26/2 37/18 37/20 49/5 49/20 50/4 50/12 66/21 71/3
**outcome [1]** 12/1
**outset [1]** 9/8
**outside [4]** 4/6 33/9 65/22 68/5 70/12 73/5
**outward [2]** 16/7 49/23
**over [16]** 19/20 37/10 44/24 45/19 46/4 46/5 46/17 47/7 51/17 52/1 52/13 54/17 55/19 56/21 64/7 64/16
**overawe [1]** 15/25
**overcome [2]** 52/3 52/4
**overly [1]** 66/2
**own [6]** 63/10 63/10 63/11 65/6 65/18 66/1

**P**

**p.m [4]** 68/4 70/11 71/8 72/7 74/7
**page [5]** 3/3 3/12 5/25 7/21 74/7
**paid [1]** 41/22
**pain [2]** 18/20 54/7
**panic [2]** 28/6 29/13
**paragraph [3]** 7/20 8/4 8/6
**part [9]** 5/15 11/21 12/20 47/3 48/10 63/12 68/11 69/24 70/25
**participation [1]** 72/25
**particular [22]** 6/8 6/10 6/10 6/12 6/13 6/15 6/15 15/1 15/2 18/8 31/13 37/16 39/19 42/7 42/21 43/20 44/13 45/18 45/20 47/8 49/1 52/3
**particularly [2]** 45/4 45/19
**parties [10]** 18/12 18/17 18/20 31/8 31/11 32/20 33/5 60/7 60/8 68/18
**parties' [1]** 68/22
**parting [1]** 18/25
**partisans [1]** 42/17
**party [1]** 18/13
**pass [1]** 64/9
**passed [1]** 46/13
**past [1]** 16/4
**pathetic [1]** 50/9
**Paul [1]** 7/6
**Pause [1]** 72/10
**people [20]** 12/10 12/11 19/22 36/14 46/25 48/14 48/15 50/22 52/21 54/14 55/3 55/5 55/11 55/23 55/25 56/7 57/20 58/7 59/6 62/9

**P**

per [1]  70/18
perceived [3]  29/25 32/2
62/6
perfectly [1]  62/12
Perform [1]  65/9
performance [4]  14/9 14/11
15/19 15/21
perhaps [1]  40/6
Perkins' [1]  25/5
person [40]
person's [1]  65/12
personal [5]  8/24 36/2 36/2
39/22 65/10
personally [2]  11/9 36/3
perspective [1]  26/18
persuaded [1]  65/18
persuades [1]  65/1
PETER [1]  2/5
Phil [3]  39/1 39/15 39/17
phone [19]  19/14 19/22 28/15
30/25 31/1 31/5 33/6 34/8
37/4 37/19 37/20 40/21 44/25
56/10 56/12 57/14 57/19 58/5
59/22
pictures [1]  50/10
PLAINTIFF [2]  1/7 2/3
planning [1]  59/5
play [1]  69/8
played [4]  38/6 70/1 70/3
70/8
playing [1]  70/7
pleaded [1]  9/10
pleasant [1]  73/3
please [5]  9/3 60/10 67/6
67/8 72/8
plural [1]  69/13
pocket [1]  31/6
point [2]  31/12 52/12
polite [4]  19/24 51/2 56/17
57/15
politely [1]  56/12
politically [1]  54/16
polled [1]  72/20
position [7]  23/18 28/3 28/5
34/8 35/12 43/3 53/4
possible [1]  9/21
potential [1]  29/15
power [3]  19/19 40/18 58/7
powerful [1]  40/17
precisely [1]  13/19
prefer [1]  55/24
prejudice [2]  12/2 65/11
prejudices [1]  8/25
preparation [1]  73/11
prepared [1]  66/8
presence [10]  4/7 7/9 8/9
41/16 67/22 68/6 69/16 70/13
72/4 73/6
present [10]  4/8 9/14 15/10
21/14 41/17 68/7 70/14 71/9
72/5 72/5
presentation [1]  46/22
presented [2]  24/19 68/10
presentence [1]  73/11
preside [1]  64/16
PRESIDING [1]  1/4
presumed [1]  9/11
pretend [1]  50/15
pretty [2]  43/21 59/1
prevents [1]  61/13
previous [3]  17/16 30/9 39/7
previously [1]  65/20
primary [1]  56/23
probably [2]  60/2 67/15
probation [1]  73/10
problem [2]  56/7 56/8
problems [5]  54/15 56/22

56/24 61/3 61/3
proceedings [2]  4/3 75/4
process [1]  72/25
product [3]  50/24 56/14
56/17
profanity [7]  23/5 34/12
34/13 35/20 38/10 55/22
62/21
professional [1]  37/23
professionalism [1]  38/1
progress [1]  15/22
prompt [1]  8/11
proof [8]  9/18 9/18 11/8
11/11 41/12 44/8 44/19 45/3
property [1]  50/11
prosthetics [1]  56/22
protected [2]  47/20 47/25
protects [2]  20/5 28/24
proud [3]  19/15 19/19 64/6
prove [20]  5/20 9/15 9/20
11/14 13/15 13/18 13/25
14/13 15/9 15/16 16/17 16/25
17/23 20/16 20/20 21/13 26/1
52/14 52/18 53/19
proved [4]  52/16 58/24 59/2
66/6
proven [2]  33/24 37/6
proves [2]  9/12 20/10
provide [3]  19/13 26/21
28/12
provided [2]  33/2 66/4
provider [1]  54/22
proving [1]  9/16
provoke [4]  18/11 18/13 60/6
60/7
public [2]  40/6 65/11
punctual [1]  73/2
punctuality [1]  73/2
punishment [2]  66/4 66/6
purely [1]  9/22
purpose [6]  16/22 29/19
30/17 31/23 64/1 64/11
pursuant [1]  74/4
pursue [1]  57/4
put [3]  54/1 68/19 69/24

**Q**

quarter [1]  41/5
question [9]  62/13 66/21
66/24 67/2 67/2 69/24 70/25
71/1 71/23
questions [6]  4/16 10/17
10/19 10/21 22/16 44/21
quick [1]  54/19
quickly [2]  20/14 54/13

**R**

race [1]  65/12
Raghda [2]  20/18 22/15
raises [1]  62/3
rather [2]  42/5 46/16
rational [2]  16/9 49/25
ray [1]  54/6
reach [4]  52/12 64/18 65/4
65/8
reached [3]  66/9 67/4 72/7
reaching [2]  10/13 65/15
reacted [2]  46/25 52/15
reacting [1]  28/11
reaction [6]  15/7 22/9 23/16
26/8 28/2 48/17
reactions [5]  18/11 18/13
47/6 60/6 60/8
read [7]  9/3 14/14 31/12
44/5 70/15 71/22 71/25

reading [1]  70/24
real [1]  63/8
realize [1]  43/8
really [5]  43/24 51/8 53/6
56/11 56/19
reason [7]  9/22 27/22 63/2
63/5 71/16 71/16 71/17
reasonable [39]
reasonableness [1]  12/4
reasonably [1]  13/16
reasons [2]  45/7 59/16
reassured [1]  28/17
rebuttal [2]  41/13 61/21
recall [2]  9/2 22/13
receive [2]  8/18 69/18
received [8]  10/11 10/14
11/6 46/25 47/6 68/8 70/15
71/10
receiver [2]  28/15 30/3
receiving [3]  30/3 50/19
50/21
recess [7]  41/6 41/8 41/14
68/4 70/11 71/8 72/2
recipient [2]  33/7 39/2
recipients [5]  32/8 35/5
35/7 47/7 48/8
recklessly [2]  6/2 15/13
recollect [1]  5/7
recollection [2]  4/19 68/19
record [1]  67/9
recording [6]  36/6 36/6
37/11 37/20 44/17 62/24
recordings [1]  44/16
rectify [1]  54/10
REED [5]  2/10 2/10 3/14 4/15
41/19
reexamine [1]  65/17
reference [1]  40/10
referenced [3]  7/15 7/21
37/12
referred [2]  31/11 73/10
refers [1]  33/25
reflection [1]  38/20
refused [2]  19/13 33/3
regard [1]  69/23
regarding [4]  4/16 6/19 9/4
15/16
regulations [1]  74/8
relate [2]  25/13 25/17
relevant [1]  20/25
relieved [2]  28/11 29/17
religion [1]  65/13
rely [1]  66/1
remaining [6]  20/14 32/12
32/15 32/19 32/24 33/2
remember [5]  10/25 12/11
12/12 21/10 66/25
rendered [1]  42/22
repeated [1]  26/11
repeatedly [1]  57/20
replay [1]  70/5
replied [4]  26/21 35/18
35/20 36/9
replies [1]  39/5
report [1]  73/11
reported [2]  28/16 74/6
reporter [2]  1/20 67/7
REPORTER'S [1]  1/13
representative [3]  22/19
51/1 56/9
Representatives [1]  24/12
reprisal [1]  16/3
request [2]  68/24 71/21
requested [1]  26/25
requesting [1]  71/22
require [1]  5/12
required [8]  9/20 18/6 18/10
18/15 18/18 48/22 60/4 62/24

**R**

**requirement [2]** 53/1 53/3
**requires [3]** 18/4 47/11 48/1
**requisite [1]** 61/13
**research [1]** 34/7
**reserved [1]** 25/7
**residence [1]** 35/4
**respect [11]** 15/6 17/12
20/17 33/17 42/4 42/23 43/5
46/9 50/7 56/2 61/1
**respectful [2]** 19/24 55/9
**respectfully [2]** 55/7 55/8
**respond [3]** 54/25 66/18
70/19
**responded [1]** 34/15
**response [4]** 28/16 37/22
38/5 59/21
**responsibility [1]** 39/11
**rest [1]** 12/21
**result [1]** 55/15
**resulted [1]** 50/9
**resume [1]** 70/9
**retaliate [6]** 14/10 15/20
16/2 21/8 25/25 29/3
**retrieve [1]** 67/25
**return [2]** 16/3 66/12
**review [1]** 68/9
**right [11]** 5/1 5/12 7/3 7/5
20/1 54/11 57/18 59/9 60/15
65/3 69/10
**Riverside [1]** 2/6
**Robert [2]** 1/9 39/4
**Roe [3]** 39/1 39/15 39/17
**room [6]** 8/19 60/21 61/1
61/7 67/24 68/2
**row [1]** 68/15
**RPR [1]** 74/12
**rude [2]** 32/5 62/7
**Rule [1]** 4/17
**rules [1]** 67/15
**running [1]** 45/15
**Rutherford [4]** 35/9 35/11
35/24 36/17

**S**

**safe [1]** 28/18
**safety [1]** 23/23
**saga [1]** 55/8
**said [63]**
**same [16]** 12/11 25/13 25/17
25/19 25/20 27/5 27/8 30/7
32/6 32/13 33/17 40/23 46/12
52/24 62/20 71/5
**Sarah [2]** 19/18 34/23
**satisfactory [1]** 73/8
**satisfied [13]** 24/7 24/9
24/12 24/14 25/10 28/19
28/21 28/25 31/18 32/10
32/18 32/24 33/16
**satisfies [2]** 33/19 33/23
**satisfy [1]** 34/10
**saw [3]** 11/10 28/8 36/21
**say [17]** 10/22 12/7 23/18
31/21 39/15 44/25 47/18
47/21 49/6 51/1 51/7 51/13
51/16 56/12 59/17 70/23
72/17
**saying [4]** 5/8 53/10 71/3
72/7
**says [11]** 4/24 5/19 11/21
29/7 35/25 39/4 47/13 63/22
68/9 70/16 70/17
**scare [3]** 19/15 25/2 29/8
**scared [1]** 25/8
**scariness [1]** 19/10
**scary [1]** 63/19
**screaming [1]** 22/23
**screen [1]** 20/24

**second [21]** 5/24 7/21 7/24
25/22 28/21 30/15 31/20
32/10 32/25 42/6 51/4 59/1
63/14 68/11 68/15 71/14
**Section [5]** 13/23 16/14
17/20 70/16 74/4
**secure [1]** 28/18
**securing [1]** 64/7
**Security [1]** 26/24
**see [20]** 7/1 7/5 11/23 12/11
30/12 31/9 33/4 44/22 50/10
50/10 50/12 52/13 55/16
57/21 60/19 60/20 61/4 61/17
69/25 71/11
**seeing [1]** 33/7
**seems [1]** 41/5
**seen [4]** 11/4 61/18 68/9
71/11
**self [1]** 44/5
**senator [4]** 25/15 34/9 35/20
47/19
**senators [1]** 58/2
**send [2]** 66/15 66/21
**sense [9]** 6/11 9/22 23/17
29/3 29/6 29/6 29/20 29/22
31/23
**senseless [2]** 63/17 63/18
**Sentencing [2]** 73/7 73/9
**separate [2]** 4/23 13/8
**separately [1]** 13/10
**September [7]** 25/14 33/18
37/11 37/13 37/13 37/15
74/10
**series [1]** 25/13
**serious [27]** 14/16 14/23
19/8 21/20 21/24 22/10 23/9
23/11 23/15 23/21 24/7 26/5
26/7 26/10 28/11 28/15 28/12
29/25 30/1 30/21 48/6 48/20
53/10 53/12 53/12 53/15 54/4
**seriously [1]** 43/24
**servant [1]** 40/6
**serve [2]** 67/19 67/19
**served [1]** 54/2
**service [7]** 39/17 51/1 55/2
56/9 56/14 56/16 67/23
**services [1]** 31/4
**session [1]** 11/5
**set [3]** 69/7 69/8 73/9
**seven [2]** 12/4 57/6
**several [2]** 54/17 69/6
**she [90]**
**sheet [1]** 30/2
**shelters [1]** 39/11
**shielded [1]** 33/12
**shock [1]** 30/2
**shocking [5]** 36/25 37/3
38/11 40/1 40/8
**shockingly [2]** 18/16 39/20
**shoes [1]** 54/2
**shortly [2]** 8/15 43/17
**should [31]** 9/5 13/1 13/10
15/4 21/24 27/14 28/2 35/21
37/18 39/9 41/6 42/16 44/18
45/2 45/7 45/12 47/19 47/22
54/3 56/24 58/15 60/11 64/22
65/1 65/12 65/17 66/1 66/2
66/10 66/17 71/17
**show [1]** 42/13
**showed [1]** 33/8
**shown [1]** 63/23
**sick [1]** 56/18
**side [2]** 42/18 42/19
**sides [2]** 4/9 27/10
**sign [2]** 54/21 66/11
**signed [5]** 66/16 66/18 68/12
69/18 72/15
**significance [1]** 38/19

**similar [3]** 20/15 20/16 55/4
**similarly [1]** 17/9
**simple [1]** 59/1
**simply [2]** 65/2 65/8
**since [2]** 41/11 45/10
**sincere [1]** 22/18
**single [1]** 9/6
**sir [6]** 37/24 38/2 51/3 51/5
57/13 57/15
**sits [3]** 60/17 60/17 68/14
**situation [1]** 50/9
**six [1]** 12/2
**sleep [1]** 50/13
**slight [1]** 26/15
**slough [1]** 58/9
**sloughing [2]** 55/3 55/6
**Smith [1]** 51/18
**so [67]**
**so-called [1]** 57/11
**Social [1]** 26/23
**soft [1]** 57/16
**solely [2]** 9/1 11/6
**solicit [1]** 26/19
**some [30]** 9/6 12/19 16/4
18/25 19/18 34/4 34/23 35/17
37/10 39/3 42/1 42/3 42/8
42/11 43/14 43/20 44/18 47/2
51/9 55/9 55/25 56/9 57/24
59/4 59/21 61/12 63/16 65/24
66/22 71/15
**somebody [15]** 26/17 29/7
48/3 50/17 51/15 51/22 53/6
53/11 56/11 56/21 57/21
57/24 59/5 63/15 63/18
**someone [4]** 22/14 32/5 62/7
63/16
**something [19]** 6/19 6/21
8/12 12/7 12/8 12/16 14/19
21/23 23/14 31/8 31/11 31/12
44/18 47/13 47/21 53/24 58/4
58/8 63/19
**sometimes [3]** 12/7 12/8
35/25
**sorry [5]** 36/8 36/11 37/24
37/25 69/20
**sort [2]** 7/2 61/12
**sound [1]** 36/12
**sounded [4]** 22/24 35/14
35/23 40/14
**southern [1]** 39/24
**speak [2]** 6/10 64/17
**speaking [1]** 71/15
**special [1]** 8/11
**specific [5]** 18/11 34/10
60/5 63/19 63/20
**speculation [1]** 9/23
**speech [2]** 47/20 47/25
**spell [1]** 67/9
**spend [3]** 20/11 44/1 59/10
**spending [1]** 60/3
**spoke [4]** 22/14 25/15 35/10
39/24
**spoken [2]** 19/17 64/4
**Stahlnecker [22]** 1/9 5/8
41/23 44/24 45/10 48/14
49/15 50/8 51/21 52/5 53/5
53/20 53/22 54/1 54/23 55/12
55/25 56/19 58/2 59/16 60/23
61/17
**Stahlnecker's [3]** 47/10 50/4
50/20
**stake [3]** 27/14 27/22 27/23
**stand [2]** 35/16 67/6
**standard [1]** 44/7
**stands [1]** 67/1
**star [2]** 33/4 33/5
**staring [1]** 28/14
**start [3]** 55/7 69/3 71/3
**started [5]** 22/23 34/6 37/17

**S**

started... [2]   37/20 70/5
starts [1]   55/16
state [5]   11/1 17/3 61/10
62/4 67/8
stated [8]   21/19 26/4 28/3
30/22 31/24 39/8 62/5 62/17
statement [38]
statements [2]   10/17 55/21
states [15]   1/1 1/4 1/6 2/3
13/22 14/6 16/15 17/21 21/6
24/11 25/23 32/22 54/12 74/5
74/9
statute [1]   14/14
stenographically [1]   74/6
STEPHEN [1]   1/3
stereotype [1]   40/12
stick [1]   43/12
still [2]   53/2 53/3
stipulated [2]   10/12 32/20
stipulation [2]   31/11 33/4
stop [1]   15/22
story [4]   47/4 53/22 53/23
54/1
Street [2]   1/21 2/5
stricken [1]   11/2
strictly [1]   43/18
submitted [1]   67/2
sue [2]   57/1 57/4
suggest [2]   23/13 45/6
suggested [3]   42/9 45/9
52/11
Suite [3]   1/21 2/6 2/11
summarize [1]   20/14
summary [1]   34/4
superseding [10]   9/9 13/5
13/7 13/12 13/17 13/21 14/4
16/12 17/13 17/19
supervises [1]   23/24
supervisor [1]   25/5
support [1]   6/16
supposed [1]   54/11
sure [4]   7/13 27/18 34/19
44/24
surrounding [6]   15/6 16/8
24/21 49/9 49/24 50/1
SVW [1]   1/8
swear [2]   4/25 55/22
swearing [1]   55/11
sweet [1]   57/16
sworn [2]   10/10 67/12
sympathy [2]   8/25 65/10
system [1]   33/9

**T**

T-A-Y-L-O-R [1]   67/11
tables [2]   60/15 60/16
take [19]   4/16 5/21 6/8 7/18
7/23 8/1 8/3 8/6 8/18 11/22
41/6 41/8 43/23 47/3 54/14
54/15 55/11 57/9 66/22
taken [3]   48/2 54/3 65/24
taking [3]   7/14 38/13 57/3
talk [22]   6/9 14/19 21/22
41/9 41/24 41/25 42/6 42/8
42/12 43/16 43/22 44/13 45/9
46/18 46/20 47/8 53/16 53/22
53/25 54/16 57/24 60/23
talked [4]   26/10 34/8 34/22
34/23
talking [18]   22/21 34/6 44/2
44/3 47/1 47/16 48/23 50/17
50/18 51/9 52/9 52/15 52/16
52/17 53/11 55/3 56/10 60/3
talks [1]   62/23

**target** [1]   29/17
targeted [2]   29/19 29/20
tasks [1]   45/10
Taylor [1]   67/10
telecommunications [1]   17/20
telephone [17]   16/23 17/2
17/2 17/25 18/1 44/23 50/18
50/25 51/15 51/17 53/20 55/4
55/20 56/6 58/23 58/25 59/3
telephonic [4]   16/20 16/21
30/14 30/16
tell [6]   4/13 55/19 66/25
68/18 71/3 71/19
telling [2]   37/18 49/17
tenants [1]   50/13
Tennessee [3]   39/6 39/10
40/10
tenor [1]   37/17
term [1]   6/13
terminate [1]   34/15
terms [5]   5/2 5/15 46/17
48/13 53/13
terrible [2]   51/14 54/9
terrorized [1]   19/6
testified [24]   11/24 12/16
12/19 13/1 19/9 23/21 27/5
29/12 30/1 31/2 31/15 31/17
32/22 32/23 33/8 35/2 36/4
36/16 36/19 37/9 38/17 62/5
62/19 63/25
testify [5]   9/13 12/23 28/8
36/22 44/18
testifying [2]   11/25 32/4
testimony [21]   10/10 10/14
11/2 11/9 11/19 11/19 11/22
12/4 12/5 12/13 12/14 12/25
13/2 13/2 25/5 27/12 29/24
36/13 63/1 68/25 71/22
than [8]   23/15 24/25 37/3
39/23 49/14 63/19 64/11
71/24
thank [14]   8/2 8/11 41/4
41/20 41/22 61/20 64/13
67/13 67/18 68/3 70/10 72/22
72/23 73/4
thankfully [1]   56/3
thanks [1]   67/23
that [468]
That's [1]   21/1
their [22]   10/22 10/23 12/25
15/19 15/21 19/1 19/3 19/11
19/13 27/12 33/9 35/5 40/15
42/22 43/4 43/5 46/22 47/2
48/17 51/16 54/15 62/25
them [41]
then [32]   5/1 5/23 6/5 7/19
7/24 20/12 20/13 22/15 23/1
27/1 31/15 32/16 36/12 37/16
39/1 39/19 40/9 41/10 42/11
46/5 46/14 52/20 53/8 55/9
55/10 57/17 63/21 64/17
67/25 68/1 69/10 70/17
theories [1]   63/10
there [41]
therefore [1]   52/11
these [64]
they [93]
THIBODEAUX [2]   1/20 74/12
thick [1]   39/24
thing [7]   7/10 40/7 40/7
42/16 43/12 54/9 71/13
things [13]   10/15 11/24
12/10 12/19 20/15 20/19 22/7
33/15 39/3 47/2 56/4 60/25
67/24
think [15]   6/16 6/17 12/18
12/21 12/25 45/11 47/18
50/20 53/6 56/1 58/5 61/4
65/2 69/2 70/25

**thinking** [3]   5/4 52/7 57/18
third [6]   21/7 22/5 22/18 28/2
18/3 20/13 21/6 24/14 25/10
25/24 29/1 30/4 46/4 46/8
52/21 52/23 59/10
this [142]
those [22]   4/14 4/23 8/21
15/8 19/2 33/15 33/16 33/19
42/13 45/25 46/16 46/17
46/18 46/19 46/21 49/16
53/18 56/4 60/11 66/3 69/25
70/1
though [2]   26/24 50/23
thought [7]   6/4 23/24 23/25
29/13 29/16 39/2 64/1
thoughts [1]   23/22
threat [82]
threaten [16]   18/2 18/5 18/7
18/18 18/24 32/3 33/15 33/21
38/22 46/11 50/16 53/21
59/12 63/15 63/15 64/12
threatened [14]   5/21 5/22
14/2 14/3 14/15 15/4 16/22
19/7 20/22 27/16 34/2 40/22
49/7 62/1
threatening [7]   13/21 16/13
33/23 51/13 52/25 53/6 55/22
threats [7]   29/15 44/15
44/15 45/5 46/24 46/25 49/16
three [7]   11/25 20/19 22/6
22/10 25/19 41/24 62/2
threw [2]   22/22 37/25
through [19]   7/22 17/6 17/7
17/18 18/23 20/7 25/13 32/12
32/16 41/18 42/10 46/5 47/9
57/12 57/24 58/20 61/18
66/16 70/5
thrown [1]   4/25
time [14]   14/5 20/11 31/16
32/15 34/20 44/1 47/1 51/5
59/10 60/3 66/23 67/17 67/22
73/1
times [2]   10/23 69/6
timid [1]   15/24
title [6]   13/22 16/14 17/21
35/12 70/17 74/4
today [2]   61/24 61/25
told [19]   9/8 12/19 19/16
22/24 23/1 23/3 26/23 34/12
34/13 34/17 34/24 35/13
35/14 35/23 37/24 54/7 65/20
69/3 69/6
tone [3]   32/1 35/22 38/8
too [5]   40/15 43/8 46/19
53/7 54/20
took [6]   9/2 24/3 24/4 37/18
37/20 65/25
totally [1]   42/18
towards [1]   65/15
track [1]   35/4
tragic [1]   55/7
training [1]   29/14
transcribed [1]   68/10
transcript [5]   1/13 71/13
71/17 74/6 74/7
transcripts [1]   71/11
transfer [5]   26/17 26/20
56/21 57/13 60/10
transferred [5]   22/15 35/11
57/22 59/7 63/23
transmission [1]   30/20
transmitted [7]   16/19 17/5
30/11 30/14 30/16 31/7 31/14
transmitting [1]   16/12
trash [1]   39/1
traveled [1]   32/21
treat [1]   13/1
treated [1]   55/15
treating [1]   37/14

**T**

treatment [1]   61/6
trial [6]   1/14 11/6 13/6
31/13 65/25 71/14
tried [4]   26/18 35/16 55/8
73/2
triggered [1]   39/9
true [26]   12/21 14/21 17/15
21/19 24/6 33/1 35/2 36/5
36/13 36/15 44/11 47/12
47/23 47/25 49/16 51/11
51/12 51/19 51/20 52/7 52/14
52/19 53/1 53/2 53/9 74/5
truly [1]   50/16
trust [2]   68/8 71/10
truth [1]   12/20
try [1]   56/4
trying [10]   37/23 50/3 56/12
57/4 57/23 59/18 59/20 59/21
63/22 63/24
turned [1]   28/14
Turning [1]   38/23
two [26]   1/14 4/19 4/22 7/2
11/24 12/11 20/12 27/9 27/21
35/18 40/22 44/14 44/15 45/4
45/8 45/22 45/25 46/21 48/1
48/8 52/24 58/19 60/16 62/1
62/19 69/11
two degrees [1]   35/18
type [4]   18/8 34/14 37/19
45/2
typical [1]   39/25

**U**

U.S [3]   1/20 2/4 2/4
Uhrig [12]   19/16 25/16 26/10
26/16 28/3 28/22 29/12 29/15
34/2 38/7 38/15 71/11
ultimate [2]   16/5 49/11
ultimately [2]   24/18 27/1
unanimity [3]   5/14 5/15 8/4
unanimous [5]   64/21 65/5
66/9 67/4 72/7
unanimously [1]   18/23
uncontroverted [2]   52/8
55/18
under [8]   14/14 14/21 15/5
22/7 48/4 49/8 51/12 51/20
undercut [1]   64/3
understand [9]   10/20 14/23
22/3 24/4 29/18 38/18 48/6
48/19 53/23
Understandably [1]   34/21
understood [3]   23/19 23/20
29/25
undisputed [1]   52/10
uneducated [2]   35/15 37/5
uniformly [1]   40/8
UNITED [14]   1/1 1/4 1/6 2/3
13/22 14/6 16/15 17/21 21/6
24/10 25/23 54/12 74/5 74/9
unlawful [3]   5/25 15/11 26/6
unless [2]   9/11 71/15
unlike [1]   27/21
until [4]   9/11 19/3 41/10
67/3
untrue [1]   12/14
untruthfully [2]   12/16 12/19
unwelcome [1]   34/13
up [23]   5/9 19/25 19/25
22/25 26/22 33/8 34/14 34/18
35/16 44/12 46/2 50/25 54/21
55/15 56/9 57/17 58/6 58/8
58/10 62/16 63/11 69/7 69/8
uplift [1]   40/18
upon [5]   9/21 39/3 49/22
65/21 67/21
us [3]   44/24 54/5 72/6

use [9]   6/12 18/15 34/13
39/9 51/9 53/9 55/9 55/12
56/4
used [14]   11/14 15/7 22/8
27/5 27/7 27/17 27/25 29/23
32/1 34/12 35/22 36/2 40/20
60/9
uses [2]   55/19 58/10
using [1]   32/7
uttered [1]   40/5

**V**

VA [12]   22/17 50/8 54/10
54/10 54/12 54/17 54/20
54/23 54/25 56/25 57/4 61/4
Valley [2]   50/12 52/6
venomous [1]   38/8
verbally [1]   6/20
verdict [20]   4/10 5/13 5/16
9/5 10/13 13/10 13/11 43/5
64/20 65/5 65/8 65/20 66/8
66/9 66/10 67/4 72/7 72/8
72/11 72/17
verdicts [1]   42/23
versions [1]   12/9
very [27]   20/15 20/16 33/25
34/3 35/24 41/20 41/23 45/22
45/23 47/17 50/24 51/2 51/4
52/2 52/2 55/18 55/18 57/1
57/15 57/16 61/2 61/15 67/22
69/5 69/14 72/23 73/1
veteran [3]   39/8 57/23 60/10
veteran's [1]   57/25
veterans [12]   23/3 31/4
39/16 39/18 54/14 54/18
56/25 58/3 58/4 64/4 64/6
64/7
veterans' [1]   58/8
victim [13]   14/3 14/8 14/11
14/16 15/4 21/5 22/9 23/16
25/23 26/8 28/3 52/15 63/9
victims [8]   14/4 14/6 33/8
36/24 48/24 49/7 53/13 57/11
view [4]   5/10 65/15 68/18
68/22
viewed [6]   15/2 16/24 22/2
22/2 30/18 49/2
views [4]   38/20 38/21 64/24
65/18
violating [1]   25/18
violation [6]   13/22 16/14
17/20 30/8 32/13 33/19
violence [3]   26/6 63/17
63/19
vital [1]   72/25
voice [8]   32/1 36/3 38/8
38/9 39/23 39/24 40/11 40/14
voicemail [1]   69/7
voicemails [6]   68/11 68/21
69/8 69/12 69/13 70/1
voices [1]   40/15

**W**

waiting [1]   66/23
want [17]   4/15 5/2 6/24
27/23 29/8 29/8 43/6 47/9
50/5 50/15 50/15 56/10 57/9
61/11 64/10 67/18 69/3
wanted [17]   7/13 19/8 19/11
19/11 19/12 19/13 29/9 34/20
34/25 39/12 39/13 40/11
40/13 42/2 42/6 64/9 67/16
wants [2]   49/18 59/7
warned [2]   35/19 65/22
was [148]
washing [1]   51/4
Washington [3]   31/8 31/14
31/17

wasn't [4]   22/20 26/25 28/9
way [16]   4/11 11/1 31/25
36/8 36/9 37/24 40/13 43/21
48/9 48/11 52/15 54/24 55/4
55/15 71/24 71/24
ways [2]   7/2 63/16
we [64]
weapons [1]   40/19
WEDNESDAY [2]   1/16 4/1
weight [5]   11/15 11/17 12/21
12/24 65/7
well [15]   34/15 44/22 48/7
49/14 53/7 56/16 60/12 60/14
60/18 60/19 60/20 61/15 69/5
69/14 71/2
went [2]   47/1 47/1
were [37]   4/6 4/19 7/8 8/8
12/24 13/13 13/15 13/18 14/6
20/2 20/3 23/22 24/22 27/18
32/22 35/7 36/2 41/15 44/15
44/25 46/23 46/24 47/6 52/16
53/24 62/12 62/15 63/25 68/5
68/10 68/19 69/15 69/24 70/1
70/12 72/3 73/5
weren't [1]   58/3
West [3]   1/21 40/7 40/7
WESTERN [1]   1/2
whaa [1]   36/12
what [71]
whatever [1]   46/5
when [62]
where [16]   7/22 17/2 35/4
35/10 36/7 36/7 37/9 38/25
44/15 50/12 51/12 55/14
58/19 60/2 60/16 60/17
whether [26]   8/23 12/3 13/3
15/3 17/5 17/10 17/12 18/24
21/24 23/9 26/6 27/14 27/15
28/1 36/17 36/18 36/18 46/17
49/7 52/12 59/15 62/25 63/1
64/20 65/25 66/6
which [27]   10/12 11/12 11/19
11/19 15/5 18/23 22/7 25/13
25/18 39/25 40/14 43/21 47/4
47/13 47/13 47/14 47/25 49/8
53/14 53/24 54/23 56/25 57/1
57/5 59/17 61/12 66/22
while [6]   11/25 14/8 15/18
19/13 55/2 66/23
white [3]   28/14 30/2 47/1
who [48]
whoever [1]   51/18
whole [2]   8/3 8/6
whose [1]   19/22
why [16]   19/16 25/18 27/24
31/20 31/21 32/9 33/8 35/18
37/21 43/21 44/12 51/24
63/12 63/24 69/6 71/16
will [46]
willingness [2]   67/19 67/19
Wilshire [1]   2/11
WILSON [1]   1/3
wish [2]   61/21 72/19
within [2]   20/9 23/12
witness [14]   3/3 10/11 10/20
11/9 11/9 11/20 11/22 12/7
12/15 12/18 12/19 13/3 31/17
36/22
witness' [7]   11/23 11/24
11/25 12/1 12/2 12/3 12/4
witnesses [18]   4/20 4/24
10/18 12/23 12/24 24/7 24/9
27/13 27/18 27/21 32/22
36/21 44/22 62/19 62/19
62/25 63/25 68/10
won't [3]   5/16 5/22 5/23
word [11]   15/22 15/23 15/25
16/2 27/17 27/18 27/19 27/20

**W**

**word... [3]** 27/25 29/21 40/5
**words [37]** 4/25 16/7 17/9
19/18 20/3 20/3 23/18 23/19
24/20 24/22 31/21 32/1 32/2
33/21 35/3 36/2 37/2 38/9
40/1 40/17 40/18 40/19 40/20
46/24 47/6 47/13 47/15 47/18
49/23 53/9 55/22 55/24 55/24
56/4 62/9 62/12 62/15
**work [4]** 23/25 42/14 54/10
64/6
**workers [1]** 23/23
**worried [1]** 25/9
**worthless [8]** 20/3 20/4
28/23 28/24 35/14 36/18 37/5
38/21
**would [43]**
**wouldn't [4]** 27/20 34/21
55/1 59/5
**write [1]** 19/12
**writing [2]** 66/18 66/19
**wrong [2]** 56/2 65/19
**wrote [3]** 27/19 35/5 35/6

**X**

**x-ray [1]** 54/6
**XXX [1]** 56/13

**Y**

**year [2]** 37/3 40/5
**years [3]** 54/17 57/6 61/4
**yelled [1]** 22/25
**yelling [1]** 22/23
**yes [13]** 6/5 7/4 7/7 7/12
7/18 41/7 58/10 61/23 68/16
68/23 69/9 69/22 69/23
**yesterday [1]** 6/7
**you [388]**
**your [99]**
**yourself [4]** 26/24 54/1 56/5
64/22
**Yucca [2]** 50/12 52/6

**Z**

**zip [1]** 26/19